**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **GARRETT LANCASTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 5:23-CV-00063-EKD** |
| | ) | |
| **v.** | ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT** |
| | ) | |
| **MICHAEL STAPLETON ASSOCIATES, LTD.,** | ) | |
| **d/b/a MSA SECURITY, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

Respectfully submitted,

December 26, 2023

*/s/ Ryan C. Berry*

Ryan C. Berry (VSB 67956)
Daniel S. Ward (VSB 45978)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
ryan@wardberry.com
dan@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA"), by and through counsel, respectfully submits this memorandum in support of its motion to strike portions of the complaint under Fed. R. Civ. P. 12(f).

## I. INTRODUCTION

Plaintiff, Garrett Lancaster ("Lancaster"), filed his one-count action for "discrimination in violation of 41 U.S.C. § 4712," alleging that MSA terminated Lancaster in retaliation for engaging in whistleblowing. ECF 1. Lancaster's Complaint makes a number of allegations that were never raised with the Department of State's ("DoS") Office of the Inspector General ("OIG") and thus were never administratively decided. Because Lancaster failed to exhaust his administrative remedies as required by 41 U.S.C. § 4712(c)(2) for those allegations, they should be stricken. Plaintiff respectfully requests that paragraphs 1, 26, 40, 41, 42, 43, 44, 45, 46, 47, and 69 be stricken from the Complaint and that Lancaster submit an amended Complaint removing the offending matter and focusing solely on the narrow issues he brought to the Department of State's ("DoS") Office of the Inspector General ("OIG").

## II. BACKGROUND

MSA engages in the business of security, intelligence, and investigative services, including explosive detection canine screening services. MSA operates the DoS's Canine Validation Center ("CVC")[1] in Winchester, Virginia pursuant to government contracts with DoS to train and test explosive detection canines and their handlers. Compl. ¶ 19.

---

[1] The CVC underwent several name changes between June 2016 and February 2022. In October 2019, the Bureau of Diplomatic Security changed the CVC's name to the Diplomatic Security Canine Center. Shortly thereafter, it was renamed to the Diplomatic Security Canine Training and Operations Center. On December 2, 2021, its name was changed again to the Diplomatic Security Global Canine Center. For simplicity, the acronym CVC is used throughout this Motion to Strike because that is what the Plaintiff calls it in his Complaint.

### A. Lancaster's Employment with MSA and His Violations of DoS Contract Standards

Lancaster was an at-will employee of MSA from December 2015[2] until June 7, 2019, where he served as a Validation and Training Specialist ("VTS") at the CVC. Compl. ¶ 9. During the final years of Lancaster's employment with MSA, his CVC duties were focused on administering validation tests to contractor canine teams seeking to perform explosive detection services in support of the DoS's Worldwide Protective Services II ("WPS II") Program. *Id.* ¶¶ 9–10. In other words, Lancaster was part of a team ensuring the canines can, without assistance, identify specific scents relating to explosives.

All validation testing at the CVC follows requirements set by DoS (the contract itself and the management staff) and WPS program requirements. *Id.* ¶ 10. The integrity of validation tests is at the heart of the CVC. All personnel assigned to validation go through a minimum of two to three weeks of on-the-job training with an experienced validator before being assigned to any validation testing exercise. The Deputy Program Manager or Lead Validator shadows new validators during testing to ensure all program requirements are met. *Id.* ¶ 25.

In or about May of 2019, an MSA employee was conducting routine video surveillance and witnessed an unnamed CVC validator deviating from CVC standards by manipulating a test after it had been validated. *Id.* ¶ 52. This finding sparked a more comprehensive review of all WPS-assigned validators for the preceding 6 months. *Id.* ¶ 54. This review found that two other validators (including Lancaster) had similarly deviated from CVC standards by manipulating a test after it was validated. *Id.* ¶ 60. A second independent review of the same preceding 6 months of surveillance video footage confirmed that Lancaster, along with the other two unnamed individuals

---

[2] MSA previously employed Lancaster at other locations from 2010 – 2015 in support of another federal agency.

deviated from CVC validation procedures. *Id.* ¶ 62. The first unnamed individual was terminated in May of 2019. The second unnamed individual (discovered in the 6-month review) was informed that MSA would no longer call on him for validation services (as he was not a full-time employee) in June of 2019. *Id.* ¶ 60. Lancaster was presented with the opportunity to either resign or be terminated in June of 2019. *Id.* ¶ 64. Lancaster refused to resign and was terminated on June 7, 2019. *Id.*

With respect to Lancaster, and as seen on the review of video surveillance footage, Lancaster manipulated odor tests for Explosive Detection Canines on several occasions in violation of established protocols and procedures for WPS teams to pass the validation testing. *Id.* ¶ 60.

MSA placed Lancaster on administrative leave between the initial discovery of his misconduct and the completion of MSA's investigation. *Id.* ¶ 58. Upon completing its investigation, MSA terminated Lancaster's employment on June 7, 2019. *Id.* ¶ 64.

### B. Lancaster's June 2019 Hotline Report

On June 9, 2019, Lancaster submitted a whistleblower hotline report to the DoS Office of Inspector General ("OIG"), in which he informed the OIG of his termination from the CVC stating it was "unlawful reprisal by MSA" (the "June 2019 Hotline Report") (attached hereto as Exhibit A).[3] Compl. ¶¶ 5–6. An OIG investigation commenced. *Id.* ¶ 6.

Prior to the June 2019 Hotline Report, Lancaster never filed a complaint with the OIG about MSA. Exhibit A. Rather, Lancaster participated in an OIG investigation relating to Karen Iovino ("Iovino"), a former colleague of Lancaster's. *Id.* Iovino submitted a hotline complaint with

[3] Exhibits A–C are non-public government records and "official information" as defined in DoS' Touhy Regulations, 22 C.F.R. Part 172. Undersigned counsel obtained DoS authorization to attach these documents.

the OIG on July 6, 2017 (the "Iovino OIG Complaint"). Compl. ¶ 26; Exhibit A. In Lancaster's June 2019 Hotline Report, Lancaster claims that MSA terminated him because he participated in the Iovino OIG Complaint investigation. Exhibit A. Lancaster alludes to his participation in the Iovino OIG Complaint investigation but never explains what he said to the OIG, who he spoke with at the OIG, or even what was discussed with the OIG. *Id.* Lancaster only states that he "cooperated with the OIG" and spoke to investigators about "different aspects" of the Iovino OIG Complaint. *Id.* Lancaster then explains his version of the facts surrounding his termination. *Id.* That is the sum and substance of Lancaster's June 2019 Hotline Report as he presented it to the OIG and subsequently to the DoS Senior Procurement Official with responsibility for making determinations under 41 U.S.C. § 4712.

Throughout the OIG's investigation of Lancaster's June 2019 Hotline Report, Lancaster participated in two interviews with the OIG. The first interview occurred on October 7, 2019 (the "October 2019 Interview") (attached hereto as Exhibit B).[4] Here, Lancaster speaks to what his employment duties were with MSA, an incident surrounding validation issues in 2016, his acknowledgment that he participated in the OIG investigation relating to Iovino and MSA's express order to "be honest and talk to the OIG investigators," the allegations of test tampering, his termination from MSA, and the expansion of MSA. Exhibit B. Nowhere in the notes of the October 2019 Interview does Lancaster discuss anything relating to what he said to the OIG, who he spoke with at the OIG, or even what was discussed with the OIG during the Iovino OIG Complaint investigation. *Id.* The second interview occurred on February 24, 2020 (the "February

[4] Exhibits A–C are non-public government records and "official information" as defined in DoS' Touhy Regulations, 22 C.F.R. Part 172. Undersigned counsel obtained DoS authorization to attach these documents.

2020 Interview") (attached hereto as Exhibit C).[5] Here, Lancaster speaks to MSA's Code of Conduct, his administrative leave, MSA's guidance for validators, DoS's Loss of Confidence in him, his prior working relationships, his discussion with OIG during the Iovino OIG Complaint investigation about "the health and wellness of the dogs," his relationship with certain individuals, his termination from MSA, and his performance reviews. Exhibit C. The only part of this February 2020 Interview relating to specific "disclosures" Lancaster made to the OIG during the Iovino OIG Complaint investigation is the "health and wellness of the dogs." *Id.* No other information relating to any sort of "disclosure" was mentioned.

On April 28, 2022, the DoS Division Director for Strategic Communications & Policy Division in Office of the Procurement Executive denied Lancaster relief under 41 U.S.C. § 4712. Compl. ¶ 7. Dissatisfied with the agency's decision to deny relief under 41 U.S.C. § 4712, Lancaster filed suit against MSA in this Court on October 08, 2023, alleging a single claim of "Discrimination in violation of 41 U.S.C § 4712." *Id.* ¶ 18–20.

Although Lancaster's 21-page Complaint purports to seek de novo review under 41 U.S.C. § 4712 of the DoS denial of his June 2019 Hotline Report, his Complaint instead overwhelmingly concerns matters that he did *not* include in the June 2019 Hotline Report, which were therefore *not investigated* by the OIG, and *not decided* by the senior agency official pursuant to 41 U.S.C. § 4712. As such, Lancaster has failed to exhaust his administrative remedies as required by 41 U.S.C. § 4712, and, as to those issues, his Complaint is not properly before this Court.

---

[5] Exhibits A–C are non-public government records and "official information" as defined in DoS' Touhy Regulations, 22 C.F.R. Part 172. Undersigned counsel obtained DoS authorization to attach these documents.

## III. LEGAL STANDARD

Exhausting administrative remedies is a prerequisite to any civil suit. *See Labranche v. Dep't of Defense*, No. 15-2280, 2016 WL 614682 at *3, n.2 (E.D. La. Feb. 16, 2016) ("[10 U.S.C. § 2409(c)(2)] affords a whistleblowing employee *who has exhausted administrative remedies* with a cause of action against the retaliating federal contractor" (emphasis added)). Courts are split on whether the exhaustion requirement is jurisdictional in nature. As such, MSA files this Motion to Strike Portions of the Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

It is well established that when a statute provides that one must exhaust their administrative remedies, claims under such statute are judicially reviewable only if the plaintiff has administratively exhausted those claims by first presenting them to the appropriate agency, in this case, DoS's OIG. *See Clark v. Brown*, 536 F. Supp. 3d 56, 61 (E.D. Va. 2021) ("[C]ivil service claims are judicially reviewable only if the plaintiff has administratively exhausted those claims by first presenting them to the appropriate agency . . . ."); *see also Fleming v. Spencer*, 718 F. App'x 185, 188 (4th Cir. 2018) ("The CRSA plainly precludes extrastatutory judicial review of constitutional claims that are asserted before an employee has exhausted his remedies under the statute"). The exhaustive framework of 41 U.S.C. § 4712 requires that such claims be reviewed on the administrative record, under a deferential review standard, and precludes them from being brought in federal district court as free-standing claims. Although Lancaster brought *some* allegations of reprisal to DoS seeking an administrative remedy, *this lawsuit* is replete with novel allegations that were not made to the OIG, investigated by the OIG, or decided by DoS. As such, 41 U.S.C. § 4712 does not provide this Court with jurisdiction.

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

While Motions to strike are generally "disfavored," when a motion to strike will "remove unnecessary clutter from the case, [motions to strike] serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989). Such is the case here, where many of paragraphs in Plaintiff's 21-page, single-count Complaint make accusations and/or allegations that were not presented during the administrative proceedings and thus are not properly before the Court.

## IV. ARGUMENT

In his June 2019 Hotline Report, Lancaster alleged that MSA terminated him because he participated in the Iovino OIG Complaint investigation. Exhibit A. Lancaster alludes to his participation in the investigation but never explains what he said to the OIG, who he spoke with at the OIG, or even what was discussed with the OIG. *Id.* Lancaster only states that he "cooperated with the OIG" and spoke to investigators about "different aspects" of the Iovino OIG Complaint. *Id.* Lancaster then explains his version of the facts surrounding his termination. *Id.*

Here, Lancaster's Complaint impermissibly reinvents the nature and extent of the alleged reprisals by MSA under 41 U.S.C. § 4712.

First and foremost, Lancaster's Complaint speaks to allegations that Iovino made in Iovino's OIG Complaint, which are not only completely irrelevant to this matter but, most importantly, are not addressed in Lancaster's June 2019 Hotline Report (except for the existence of the Iovino OIG Complaint). Exhibit A. These allegations should be stricken in their entirety, including paragraphs 40, 41, 42, and 43.

Second, Lancaster's Complaint alleges that Lancaster made disclosures in the Iovino OIG Complaint investigation; however, there is no indication whatsoever of these "disclosures" in

Lancaster's June 2019 Hotline Report or either of his interviews with the OIG.[6] Exhibits A, B, C. These allegations should be stricken in their entirety, including paragraphs 44, 45, and 46.

Third, Lancaster's Complaint alleges that Lancaster made disclosures in his June 2019 Hotline Report that do not exist. These allegations should be stricken in their entirety, including paragraphs 1, 26, 47, 69.

There are only two vague statements that Lancaster makes in his June 2019 Hotline Report, the October 2019 Interview, or the February 2020 Interview, which are remotely relevant to this matter. In Lancaster's June 2019 Hotline Report he mentions speaking to the House Oversight Committee (about what, he does not say) and he briefly mentions the "health and wellness of the dogs" in his February 2020 Interview. Exhibits A, C.

The only whistleblower reprisal claims properly before this Court are those for which DoS has made a final determination. DoS's determination focused solely on the whistleblower reprisal claims outlined in Lancaster's June 9, 2019 Complaint. As such, any reference to "disclosures" that Lancaster allegedly made during the Iovino OIG Complaint investigation[7] is not well found and should be stricken from the Complaint. Lancaster's inclusion of these new allegations is an "end around" the requisite administrative procedures and an attempt to bootstrap his various and sundry late developed claims to a retaliation complaint he filed years ago. In doing so, Lancaster is attempting to forego the administrative process. This should not be tolerated by the Court.

---

[6] It is also worth noting that there is no record of these allegations in the OIG Administrative Record relating to the Iovino OIG Complaint.

[7] Lancaster alludes to his "interviews" with the OIG during the Iovino OIG Complaint investigation. Undersigned counsel is not aware of the existence of any interview notes of Lancaster in the Iovino OIG Complaint investigation. To MSA's knowledge, the OIG did not rely on anything Lancaster provided to the OIG in its final decision-making process, as shown by the lack of interview notes or information provided by Lancaster in the Administrative Record. To the extent interview notes relating to Lancaster's alleged interview in the Iovino OIG Complaint investigation exist, undersigned counsel has never seen them.

Finally, and as discussed below, Lancaster should only be permitted to plead "upon information and belief" if the action is purely within the Defendant's knowledge. *McClain & Co., Inc. v. Carucci*, No. 3:10–cv–00065, 2011 WL 1706810, at *4 (W.D. Va. May 4, 2011) ("Pleading 'upon information and belief' is appropriate when the factual basis supporting a pleading is only available to the defendant at the time of pleading.").

### A. Portions Of Lancaster's Complaint Containing or Referencing The Allegations That Lancaster Did Not Present During The DoS Proceedings Must Be Stricken As Immaterial To Plaintiff's Lawsuit Pursuant To Fed. R. Civ. P. 12(f).

Pursuant to Fed R. Civ. P. 12(f), the Court may strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In applying this rule, a district court has broad discretion in deciding whether to strike matters from pleadings. *Renaissance Greetings Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 246 (4th Cir. 2007). Further, "A plaintiff fails to exhaust [his] administrative remedies if [he] (1) did not complete the agency's adjudication process; (2) did not make each of the claims [he] now brings in federal court during that process; or (3) did not make the same specific arguments in support of each of those claims." *Iovino v. Michael Stapleton Assocs., Ltd.*, 600 F. Supp. 3d 610, 619 (W.D. Va. 2022). If plaintiff "stumbles at any of these steps" then "plaintiff has failed to exhaust [his] administrative remedies." *Id.* Although Lancaster completed the DoS's adjudication process, he "stumbles" at the next two steps as he failed to make each of the claims and failed to make the same specific arguments he now makes in district court in the DoS adjudication process. *Id.*

Lancaster may argue his new claims (*i.e.*, claims raised in his Complaint before this Court that were *not* raised in the agency proceedings) should be allowed to proceed despite his failure to exhaust his administrative remedies as to those claims because he should be permitted to "piggyback" on the OIG's investigation of Iovino. This is not accurate. Those allegations must be

excluded. *See Shively v. Dep't of the Army*, 59 M.S.P.R. 531, 538 (1993) (allegations of whistleblowing disclosures that had not been brought to the attention of OSC cannot be considered in an IRA appeal); *see also Iovino*, 600 F. Supp. 3d at 622 ("Any pertinent factual allegations that [plaintiff] uses to sustain a new, unexhausted theory of relief and that a reasonable investigation of the Agency Filing would not have uncovered are prejudicial.").

Exhaustion is a statutory mandate, and a court may not carve out an exception unsupported by the statutory text. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (stating that "[w]here Congress specifically mandates, exhaustion is required"). Under the system of review set out in 41 U.S.C. § 4712, exhaustion of remedies at the administrative level is a prerequisite to filing a civil action. 41 U.S.C. § 4712. 41 U.S.C. § 4712 complaints must first be made to DoS's OIG and, thereafter, if the contractor employee has exhausted their administrative remedies, then (and only then), may the employee bring a civil action. *Id.*

Because Lancaster's Complaint brings numerous allegations that are not contained in his OIG Administrative Record (or, for that matter, Iovino's Administrative Record), the Court must strike these allegations as it cannot adjudicate them as a first resort. *See Iovino*, 600 F. Supp. 3d at 620 (citing *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)) ("[A] plaintiff fails to exhaust his administrative remedies where his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit."). The Court cannot pass on these allegations given the carefully delineated scheme of administrative review set under 41 U.S.C. § 4712. This scheme does not allow for free-standing 41 U.S.C. § 4712 allegations and claims to be pressed first in a district court. Procedures under the Whistleblower Protection Act ("WPA") are similar. "Judicial review of a WPA claim occurs only after the [MSPB] has issued a final decision on the claim." *Harris v. Evans*, 66 F. App'x 465, 466 (4th Cir.

2003). In fact, the Fourth Circuit has held "under no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action directly before it in the first instance." *Kennebeck v. Napolitano*, No. 1:13cv88, 2013 WL 3368960, at *5 (E.D. Va. July 3, 2013).

The Court should strike individual paragraphs of the Complaint to remove all impermissible allegations. At a minimum, the following prejudicial paragraphs of the Complaint need to be stricken: 1, 26, 40, 41, 42, 43, 44, 45, 46, 47, and 69.

### B. Portions Of Lancaster's Complaint Must Be Stricken Pursuant To Fed. R. Civ. P. 12(f) As Improper Pleading.

In paragraph 46 of the Complaint, Lancaster alleges: "On information and belief, Plaintiff was interviewed about the health and wellbeing of the explosive detection canines, in particular the threat from the repeatedly impaired Vet Tech who could not perform her job properly." Why does Plaintiff allege "on information and belief" an allegation of which he has particular knowledge? Plaintiff is the individual with actual knowledge as to this allegation. As such, Plaintiff should not be permitted to make the allegations in paragraph 46 of the Complaint under "information and belief."

Lancaster is not permitted to make allegations "upon information and belief" as to actions that are only within Plaintiff's knowledge. *McClain & Co., Inc. v. Carucci*, No. 3:10–cv–00065, 2011 WL 1706810, at *4 (W.D. Va. May 4, 2011) ("Pleading 'upon information and belief' is appropriate when the factual basis supporting a pleading is only available to the defendant at the time of pleading."). The Southern District of New York found that when the plaintiff "has no legitimate excuse for not pleading on personal knowledge," the plaintiff cannot plead "upon information and belief." *See Merrill Lynch Futures Inc. v. Morici*, No. 84 Civ. 2485–CSH, 1985 WL 1314, at *2 (S.D.N.Y. Apr. 1, 1985) (finding, when a plaintiff pleads a statement "upon

information and belief" but that information is readily accessible to the plaintiff, the plaintiff must "replead on personal knowledge").

As such, paragraph 46 should be stricken in its entirety.

## V. CONCLUSION

For all the reasons stated herein, Defendant, MSA, respectfully requests that this Court grant its motion to strike the allegations made in paragraphs 1, 26, 40, 41, 42, 43, 44, 45, 46, 47, and 69 of Lancaster's Complaint that were not raised and/or decided at the administrative level as immaterial and direct Lancaster to submit an amended Complaint removing the offending matter and focusing solely on the narrow issues he brought to the DoS OIG. Lancaster's Complaint should also be amended to remove any factual allegations improperly pled.

Respectfully submitted,

Date: December 26, 2023

*/s/ Ryan C. Berry*

______________________________

Ryan C. Berry (VSB 67956)
Daniel S. Ward (VSB 45978)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
ryan@wardberry.com
dan@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 26, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Nate L. Adams III
Nate L. Adams III, P.C.
ADAMS AND ASSOCIATES
11 South Cameron Street
Winchester, VA 22601
(504) 667-1330
nadams@nadamslaw.com

Stephani L. Ayers
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K St. NW, Suite 1100
Washington, DC 20006
(813) 382-7865
stephani@whistleblowerdefenders.com

*/s/ Ryan C. Berry*
___________________________________
Ryan C. Berry