**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | |
|---|---|
| **GARRETT LANCASTER,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**MICHAEL STAPLETON ASSOCIATES, LTD. d.b.a. MSA SECURITY, INC.,**<br><br>*Defendant.* | **CASE NO.** _5:23-cv-00063-EKD___<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE COMPLAINT** |

## I. SUMMARY OF ARGUMENT

Defendant moves to strike eleven paragraphs of Plaintiff's complaint under this Court's FRCP 12(b) authority.[1] This Court requires that the moving party meet the substantial burden of showing that the challenged material is "prejudicial" in sufficient detail to support striking paragraphs. Despite this, for most of the material, Defendant fails to describe any "prejudice" to them. Moreover, Defendant cannot credibly demonstrate prejudice to them from the challenged paragraphs, in part because: (a) three paragraphs are simply introductory summaries of Plaintiff's allegations and claims; (b) four paragraphs are "background facts" to the ultimate protected disclosures that Plaintiff reported; and (c) the remaining four paragraphs are delineated protected activities of the Plaintiff that he previously reported to the same government body with which he

[1] Defendant's Memorandum in Support of its Motion [Doc. 9-1, at p. 1] claims, "*Plaintiff* respectfully requests that paragraphs 1, 26, 40, 41, 42, 43, 44, 45, 46, 47, and 69 be stricken from the Complaint…" (emphasis added).

then filed his reprisal complaint. Moreover, all of these challenged facts can be expected to follow from a reasonable administrative investigation by the OIG into Lancaster's reprisal complaint. As one final issue with their Motion, Defendant has filed this Motion at such an early phase in the litigation, before the parties have exchanged discovery documents, that they base their arguments on a tiny subset of documents in the OIG file that were not created by Plaintiff Lancaster, but rather presumably authored by the OIG. They then ask the court to hold Plaintiff Lancaster solely responsible for the content or omissions of those two documents authored by the OIG. This not only ignores major portions of the OIG file that may only be discovered further in litigation but also ignores the Report of Investigation that specifically discusses or references the facts that Defendant has challenged as unexhausted. Finally, MSA challenges factual allegations for meetings they actually attended at the time, such as Lancaster's August 2018 interview with the OIG "Beginning in August 2018, Plaintiff Lancaster attended a second set of interviews with OIG investigators, *this time with lawyers for MSA present*"; they cannot claim prejudice as to complaints and facts they actually received at the time along with the OIG. The Court should deny the Defendant's motion in its entirety.

## II. FACTS

Plaintiff Lancaster is a cooperating witness in a series of state and federal investigations into management wrongdoing at MSA. In 2017, Plaintiff's former co-worker, Dr. Karen Iovino, began making a series of reports regarding gross mismanagement of a federal contract, abuse of authority related to a federal contract, and regulatory violations of a federal contract to MSA officials and state and federal government agencies.[2] Dr. Iovino's reports covered numerous areas of concern, including, but not limited to: threats to the health and wellbeing of the dogs under the

[2] *Id*., at para. 1. *See also* Ex. 1, ROI.

care of the Defendant, substance abuse of employees, and misuse of government property and funds. Beginning in March 2018, Mr. Lancaster was repeatedly interviewed by various state and federal investigators about the concerns and reports initially raised by Iovino-- until his retaliatory termination in June of 2019.[3] He described these contacts and reports in more detail in his Complaint, at paragraphs 44-47:

> **PROTECTED ACTIVITIES**
> Para. 44: Plaintiff Lancaster was a witness to some of the concerns described in Iovino's complaint. On March 14, 2018, the OIG conducted an initial interview of Plaintiff Lancaster in response to Dr. Iovino's complaint. Plaintiff Lancaster provided information to the OIG relevant to Dr. Iovino's allegations, including information regarding employees' personal use of MSA/DOS property, including a snowblower, generator, and truck.
>
> Para. 45: During the course of this investigation Lancaster also provided information regarding the relationships at the CVC between the DOS PM and MSA employees. He participated in at least one additional follow up interview with the investigators regarding the concerns identified in Iovino's complaint. Plaintiff Lancaster also provided credible evidence related to the investigation of an allegation of misuse of federal funds. Ultimately, Plaintiff Lancaster's disclosures contributed to a $240,000 recovery under the Program Fraud Civil Remedies Act.
>
> Para. 46: Beginning in August 2018, Plaintiff Lancaster attended a second set of interviews with OIG investigators, this time with lawyers for MSA present. Because many employees were intimidated or chilled by the presence of the company's lawyers, the employees and/or investigators requested to meet off site. Plaintiff Lancaster met with investigators off site to provide more in-depth information. On information and belief, Plaintiff was interviewed about the health and wellbeing of the explosive detection canines, in particular the threat from the repeatedly impaired Vet Tech who could not perform her job properly. Two additional investigators from the Virginia Medical Board also interviewed Lancaster about his observations regarding the impaired Vet Tech. Later, the Vet Tech acknowledged her impairment with the Board of Veterinary Medicine and was suspended. She then entered a Consent Order with the Board that stayed her suspension. She was ultimately suspended by the Board for her failure to abide by the order which stayed the suspension, but Defendant continued to employ her throughout Lancaster's time there.
>
> Para. 47: On September 5, 2018, Plaintiff Lancaster spoke with a member of the House Oversight Committee about concerns surrounding the operations at CVC. The House Oversight Committee has broad congressional jurisdiction to investigate fraud, waste, abuse and mismanagement in the Departments of State, Justice, Homeland Security, Defense, Veterans Affairs, and the IC. Plaintiff Lancaster discussed issues with said member and staff

[3] These repeated interviews and contacts are referenced in more detail in his Complaint, Paras. 44-48 and in the Ex. 1, Report of Investigation.

until January 2019 regarding conflicts of interest, relationships of DOS and MSA employees, abuse of power and the wellbeing of the EDCs.

After he was retaliatorily terminated in June 2019, Plaintiff Lancaster then filed a separate *reprisal complaint* with the DOS OIG on June 9, 2019. In his June 9th contact with the OIG, he described the nature of his disclosures as:

> Gross mismanagement of a Federal contract or grant
> Gross waste of Federal funds
> An abuse of authority relating to a Federal contract or grant
> a violation of law, rule, or regulation related to a Federal contract

(Motion, Ex. A, p. 2). In his filing, Lancaster further explained that he had repeatedly cooperated with several investigators about different aspects of Iovino's complaint, including investigators from the OIG and Congress.

> p. 2: **I have cooperated with OIG in regards to a complaint** filed against MSA Security and the State Department's Canine Validation Center. **The initial [sic] complaint was filed by Karen Iovino.**
>
> p. 2: I have spoken with **several investigators** in reference to **different aspects of the initial complaint.** I have also spoken with **investigators for the House Oversight Committee for National Security.** My Supervisors were made of aware of my initial contact with OIG.

(Motion, Ex. A, p.2 (emphasis added)).

When asked to discuss the details of the "reprisal action" taken against him, Plaintiff Lancaster described a definite negative shift in how he was treated after MSA became aware that the Iovino OIG complaint against them was not going away. (Motion, Ex. A, p.3). Mr. Lancaster reported he was repeatedly called on by different OIG investigators to provide information about the scope of concerns that started with Dr. Iovino's reports. (Motion, Ex. A, p.3). Mr. Lancaster also described in his reprisal report that he was named as a "cooperating witness for OIG" in documents submitted to the MSA legal teams. *Id.* He added:

> In April 2019, DR Iovino was served with a lawsuit by MSA, in which I was named. In reference to the suit, an affidavit was issued to MSA naming myself as a cooperating witness in a criminal investigation. Just a few weeks later, May 21st, I was sent home on administrative leave.
>
> (Motion, Ex. A. p. 3).

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(f) allows district courts to strike from a pleading “any redundant, immaterial, impertinent, or scandalous matter”. However, Rule 12(f) motions are “generally viewed with disfavor” “because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *See Iovino v. Michael Stapleton Assocs*., 600 F. Supp. 3d 610, 618 (W.D. Va., 2022), citing *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) *and* 5A A. Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 1380, 647 (2d ed. 1990).

Additionally, the moving party bears the substantial burden to show that the challenged material is “prejudicial.” *Iovino*, at 618, citing *Hardy v. Lewis Gale Med. Ctr.*, 377 F. Supp. 3d 596, 605 (W.D. Va. 2019) (emphasis added); *citing also* 5C *Wright & Miller* § 1382 (3d. ed. 2021). A motion to strike should only be granted when the allegations have ‘no possible relation or logical connection to the subject matter of the controversy.” *Id., citing Thornhill v. Aylor*, 3:15-CV-00024, 2016 WL 258645, at *2 (W.D. Va. Jan. 20, 2016) (citations omitted). Thus, even when ‘technically appropriate and well-founded’, such motions are often ‘denied in absence of demonstrated prejudice to the moving party.” *Palmer v. Oakland Farms, Inc.* 5:10CV00029, 2012 WL 2605179, at *1 (W.D. Va, June 24, 2010). Any doubt about whether the challenged material should be stricken is resolved in favor of the non-moving party. *Sturdivant v. Arc of Haywood Cnty., Inc.*, No. 1:18 cv 123; 2018 WL 2138543, at *1 (W.D.N.C. May 9, 2018); *see*

*also* 5C *Wright & Miller* § 1382. "The decision of whether to strike all or part of a pleading rests within the sound discretion of the [c]ourt." *Smith v. Wash. Post Co.*, 962 F. Supp. 2d 79, 84 (D.D.C. 2013).

## III. <u>LEGAL ANALYSIS</u>

Defendant moved to strike Complaint Paras. 1, 26, 40-44, 45-47 and 69 pursuant to FRCP 12(f). The Defendant set forth the guidelines from the *Iovino* Court as to what constitutes prejudicial fact allegations: (1) the challenged fact allegations must be used to sustain a new, unexhausted theory of relief, *and* (2) a reasonable investigation of the Agency Filing would not have uncovered said facts. *Iovino,* at 622. Also see *Sydnor v. Fairfax County*, 681 F.3d 591, 594 (4th Cir. 2012). "The touchstone for exhaustion is whether plaintiff's administrative and judicial claims are reasonably related, not precisely the same." *Id.* at 595. Under that standard, an Agency Filing alleging retaliation "does not strictly limit a [federal] suit that may follow." *Id.* Rather, if "a plaintiff's claims in her judicial complaint are reasonably related to her [Agency Filing] and can be expected to follow from a reasonable administrative investigation she may advance such claims in a subsequent civil suit." *Id.*

### A. <u>The Defendant's Attacks on Summary and Background Paragraphs of the Complaint Paras 1, 26, 40-44, and 69 Are Not Supported By The Law:</u>

First, Defendant attacks three summary paragraphs of the Complaint, including Para. 1 —-the "INTRODUCTION", Para. 1; "VI. STATEMENT OF GENERAL FACTS", Para. 26; and finally the "CLAIM", Para. 69. These paragraphs simply summarize the nature of the claims before the Court:

> Para. 1: Plaintiff Garrett Lancaster ***files this Complaint of discrimination against his former employer Michael Stapleton Associates, Ltd. ***for violation of 41 U.S.C. § 4712. This discrimination was in retaliation for Plaintiff reporting gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to

a Federal contract or grant, a substantial and specific danger to public health or safety, and/or a violation of law, rule, or regulation related to a Federal contracts, including via participating in federal agency and congressional investigations into said gross mismanagement, fraud, and mistreatment of canines, including medical malpractice by intoxicated and impaired medical staff, violation of animal protection and veterinary licensing laws, and abuse of authority by MSA management in failing to remediate the malpractice and retaliation. The discriminatory acts included retaliatorily investigating and terminating Plaintiff Lancaster.

Para. 26: Plaintiff's advocacy, as further described below, on behalf of animal welfare and against gross waste and gross mismanagement, amplified and was in concert with and in support of the reports of his fellow MSA employees Dr. Karen Iovino and Dr. Carolyn Olech. Plaintiff's advocacy was both internal to Virginia based Contractor supervisors and external to the DOS OIG and state veterinary officials. Plaintiff Lancaster's reports required corrective actions against the Contractor's medical personnel who were committing malpractice, supervisors who neglected and abused their positions in failing to take corrective actions, and company officials failing to maintain and manage a program that met the operational goals of the contract.

Para. 69: Plaintiff engaged in a protected activity by disclosing to the required persons and bodies information that Plaintiff reasonably believed was evidence of gross mismanagement of a federal contract or grant, a gross waste of federal funds, an abuse of authority relating to a federal contract or grant, or a violation of law, rule, or regulation related to a federal contract or grant. Plaintiff's disclosures included the mistreatment of canines, use of government property and vehicles for personal purposes, and the compromised integrity of the canine's anti-terrorism role in detecting explosives or other threats resulting from their abuse.

Defendant then moves on to attempting to strike four paragraphs of "Background Facts Specific to Protected Activity" that elaborate on the timeline as to Iovino's complaints (complaints Lancaster specifically invoked as one of the bases upon which he was terminated):

**BACKGROUND FACTS SPECIFIC TO PROTECTED ACTIVITY** [Doc. #1, Complaint, p. 11]

Para. 40: On July 6, 2017, Plaintiff Lancaster's fellow MSA employee, veterinarian Karen Iovino, contacted the OIG to report that MSA and DOS officials engaged in misconduct, including personal use of government property. Dr. Iovino made several reports of MSA wrongdoing, including ultimately the mistreatment of the explosion detection canines.

Para. 41: After receiving Iovino's misconduct allegations in July 2017, the OIG requested information from the Department's Office of Acquisitions Management (AQM), the office responsible for awarding and administering contracts. AQM notified the Bureau of Diplomatic

Security’s Office of Overseas Protections (DS/DO) about the complaints, and the complaints were conveyed to MSA.

Para. 42: Dr. Iovino filed a whistleblower retaliation complaint with the Department of State OIG on August 4, 2017.

Para. 43: After Dr. Iovino’s protected disclosures to MSA and the OIG, MSA terminated Dr. Iovino via letter dated August 18, 2017.[4]

Paras. 1 and 26 are summary introductions and descriptions as to what the Complaint alleges. In *Oswalt*, the Defendant moved to strike a Complaint’s "Introduction" section that was two-and-half pages long and six paragraphs. Although the Court determined the introductory paragraphs may be redundant and unnecessary, Defendants did not show that this section was so prejudicial that it should be stricken under Rule 12(f). *See also Mark Andy, Inc. v. Cartonmaster Int'l (2012), Inc.,* No. 4:14-cv-00986, 2014 U.S. Dist. LEXIS 171886, 2014 WL 7140630, at *2 (E.D. Mo. Dec. 12, 2014) ("At most, the Introduction is redundant, because it includes some facts that are addressed later in enumerated paragraphs. However, the Court does not find that this redundancy alone warrants striking the Introduction in the absence of some prejudice to Defendants."). *See also Iovino*, at 622 (finding background paragraphs not bearing on the ultimate facts to not be prejudicial). Defendant must describe, with particularity, how the paragraphs are prejudicial. Defendant fails to take on this burden in any way. This failure is fatal to their motion to strike these paragraphs. *See Oswalt v. Rekeweg*, No. 1:17-cv-00278, 2017 U.S. Dist. LEXIS 184138, 2017 WL 5151205, at *2 (N.D. Ind. Nov. 7, 2017).

---

[4] These Complaint background facts are also specifically recorded in the March 2021 Report of Investigation into Lancaster’s Concerns [Ex. 1, at p. 5], which noted various facts about the state of Iovino’s disclosures and employment: “In July 2017, an MSA employee, a veterinarian, contacted OIG and accused MSA, as well as Department officials, of misconduct, including procurement fraud, misuse of government vehicles, and mistreatment of canines. In August 2017, the veterinarian was terminated by MSA and later filed a whistleblower retaliation complaint with OIG.”

## B. **Defendant's Attacks On Specific Facts Surrounding Protected Activities, para. 44-47:**

Defendant then finally moves against a subset of Plaintiff's actual protected activities, as set forth at paras 44- 47, excerpted above, claiming that Plaintiff did not discuss the facts surrounding his protected activities sufficiently enough in his June 2019 *reprisal* complaint, even though Defendant attended the OIG interviews and Plaintiff had previously raised these concerns in 2018 and 2019 OIG investigations. They argue this based on an October 7, 2019 Record of Interview [Ex. B] and February 24, 2020 Record of Interview[Ex. C]). This is in error for multiple reasons: (1) These two interview notes are a small subset of the documents that are present in the OIG investigatory file, and do not speak to the full scope of the OIG investigation as to what was presented to them, what was discovered or what could have reasonably been discovered and what was investigated[5]; (2) the OIG already possessed the facts that described Mr. Lancaster's 2018-2019 protected disclosures as they were described in paras. 1, 26, 44-47, because Lancaster had already reported about the substance of those disclosures in 2018 and 2019 in the context of the OIG investigating Dr. Iovino's complaint; (3) Mr. Lancaster did not author either of the two Interview Notes and thus Defendant claims that he should be held responsible for what the OIG chose to record does not comport with any legal guidance they provided; (4) Defendant chooses to ignore the OIG's March 2, 2021 Report of Investigation that demonstrates clearly that the Agency investigation encompassed factual allegations that Defendant now challenges in its Motion, including them noting:

> Mr. Lancaster's participation in a March 2018 OIG interview concerning allegations of gross mismanagement and fraud constitute a protected disclosure because the information was given to the Office of Inspector General, a covered entity, and dealt with information that he reasonably believed to be evidence of gross mismanagement of a Federal contract,

---

[5] As the Court in Iovino noted, the judge was loathe to strike factual allegations before discovery, when more material may be discovered as to what the agency investigation finally encompassed.

> as well as violations of law, rule, or regulation related to a Federal contract. For example, Mr. Lancaster provided information to OIG that resulted in a $240,000 recovery under the Program Fraud Civil Remedies Act.

(Compare Complaint para. 45 with Opposition, Ex. 1, Report of Investigation, p. 6). Further, as demonstrated above, consistent with Complaint Para. 47's statement that Plaintiff spoke with a member of the House Oversight Committee, Mr. Lancaster specifically reported to the OIG in his form submission "I have also spoken with investigators for the House Oversight Committee for National Security." [Ex. A]. A reasonable investigation of the Mr. Lancaster's filings would have easily uncovered the facts surrounding Plaintiff's contact with the House Oversight Committee.

## CONCLUSION

The Motion should be denied.

Respectfully Submitted,


/s/Nate L. Adams III
VSB No. 20707
Nate L. Adams III, P.C.
ADAMS AND ASSOCIATES
11 South Cameron Street
Winchester, VA 22601
(540) 667-1330
***nadams@nadamslaw.com***

s/Stephani L. Ayers____________________
/s/ Stephani L. Ayers
Admitted *pro hac vice*
4701 Admiral Way SW #276
Seattle, WA 98116
On behalf of the
Government Accountability Project
1612 K Street, N.W., Suite 1100
Washington, D.C. 20006
(202) 926-3311

Attorneys for Mr. Lancaster