**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **GARRETT LANCASTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 5:23-CV-00063-EKD** |
| | ) | |
| **v.** | ) | |
| | ) | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF THE COMPLAINT** |
| **MICHAEL STAPLETON ASSOCIATES, LTD., d/b/a MSA SECURITY, INC.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA"), by and through counsel, respectfully submits this Reply in Support of its Motion to Strike Portions of the Complaint, pursuant to Fed. R. Civ. P. 12(f).

## I. INTRODUCTION

Plaintiff, Garrett Lancaster ("Lancaster"), in his response to MSA's motion to strike, continues his attempts to circumvent the well-established process requiring whistleblowers to administratively exhaust all claims by presenting them to the appropriate agency *before* bringing the claims to a federal district court.

In this case, Lancaster's Complaint makes several allegations that were never raised with the Department of State's ("DoS") Office of the Inspector General ("OIG") and thus were never administratively decided. Allowing claims into this Court that have not been brought before the DoS OIG is prejudicial to MSA. Plaintiff's failure to follow proper procedure forces MSA to litigate claims that are not ripe for litigation.

Plaintiff should not be granted an exception to this rule based on his *hope* that discovery may uncover facts helpful to his claim. Even if discovery does uncover something that Plaintiff may want to use, Plaintiff cannot bootstrap his way around the statutory requirements that his

complaints must be administratively decided at DoS OIG before bringing them into this Court. *See* 41 U.S.C. § 4712(c)(2).

Failure to exhaust administrative remedies is a jurisdictional issue that must be determined at the outset of litigation. *See, e.g.*, *Dowd v. Catalyst Campus for Tech. & Innovation*, No. 1:23-CV-33-JNP-DAO, 2023 WL 8702587, at *1 (D. Utah Dec. 15, 2023) (finding the NDAA requires a Plaintiff to exhaust administrative remedies before filing an action in the district court); *Jarmon v. Little Rock Hous. Auth.*, No. 4:21CV001237-JM, 2023 WL 5401929, at *1 (E.D. Ark. Aug. 22, 2023) (asserting exhaustion of administrative remedies is a jurisdictional matter); *Iovino v. Michael Stapleton Assocs., Ltd.*, 600 F. Supp. 3d 610, 618–19 (W.D. Va. 2022) (holding that the NDAA required exhaustion of administrative remedies before the court could hear plaintiff's claim); *Moore v. Univ. of Kan.*, 118 F. Supp. 3d 1242, 1252–54 (D. Kan. 2015) (holding that the NDAA requires exhaustion of administrative remedies as a jurisdictional requirement).

Because Plaintiff failed to exhaust his administrative remedies before bringing this action, as required by 41 U.S.C. § 4712(c)(2), any allegations not administratively determined by the DoS OIG should be stricken. Defendant respectfully requests that paragraphs 1, 26, 40, 41, 42, 43, 44, 45, 46, 47, and 69 be stricken from the Complaint and that Plaintiff submit an amended Complaint removing the offending allegations and focusing solely on the narrow issues he brought to DoS OIG.

## II. ARGUMENT

Plaintiff continues to impermissibly reinvent the nature and extent of the alleged reprisals by MSA under 41 U.S.C. § 4712. Plaintiff's Complaint overwhelmingly concerns matters that he did *not* include in the June 2019 Hotline Report, which were therefore *not investigated* by the OIG, and thus *not decided* by the senior agency official (as required under 41 U.S.C. § 4712). Lancaster

has failed to exhaust his administrative remedies as required by 41 U.S.C. § 4712, and, as to those allegations, his Complaint is not properly before this Court.

**a. Plaintiff's Assertion that Summary and Background Paragraphs Cannot be Stricken is Baseless.**

Plaintiff argues that MSA's "attacks" on ¶¶ 1, 26, 40–44, and 69 are improper because these paragraphs are either "summary" paragraphs or facts that merely "elaborate on the timeline." ECF 15 at 6–7.[1]

Background information such as "the size and purpose of MSA's government contract, as well as some of the oversight provided by DoS" is considered background information that "does not bear directly on the ultimate facts at issue." *Iovino v. Michael Stapleton Associates, Ltd.*, 600 F.Supp.3d 610, 622 (W.D. Va. 2022). However, information that "bear[s] directly on the ultimate facts at issue" is not "background" or "summary" information and must be stricken. *Id.* The information MSA seeks to strike bears directly on the ultimate facts at issue in this case and should be stricken as the information was not administratively determined by DoS OIG. This information should not be permitted in this case.

In paragraphs 1, 26, and 69 of Plaintiff's Complaint, Plaintiff alleges that he made disclosures in his June 2019 Hotline Report[2] that are found nowhere in the Hotline Report. ECF 1 at 1, 7, 19. Paragraph 1 of the Complaint is under the "Introduction" section, paragraph 26 is under the "facts" section, and paragraph 69 is included in Plaintiff's actual "claim." *Id.* Nothing about

---

[1] While the location of the improper allegations is not relevant, it is also noteworthy that Paragraph 66 of Plaintiff's complaint (the first paragraph of Plaintiff's claim against MSA) states "Plaintiff realleges all [*sic.*] Paragraphs 1-65 above." As such, the offending allegations are not merely "summary" paragraphs that "elaborate on the timeline," they are, per the plain language of the Complaint, material to the claim itself.

[2] MSA incorporates by reference all definitions as defined in its Motion to Strike. ECF 9-1.

paragraphs 26 and 69 are "background" or "summary" paragraphs as they are included in Plaintiff's factual background and claim, both of which he intends to rely on and "bear directly on the ultimate facts at issue." *Iovino*, 600 F.Supp.3d at 622. Although paragraph 1 is listed under the introductory section, the facts included in this paragraph are not merely "background" or "summary" facts but are "facts" that "bear directly on the ultimate facts at issue" in this matter. *Id.* These are "facts" that Plaintiff will directly rely on as "facts" he told to the OIG. These "facts" were not administratively decided and therefore should not be permitted in the Complaint. Allowing claims into this Court that have not been brought before DoS OIG is prejudicial to MSA as Plaintiff has failed to follow proper procedure and forces MSA to litigate claims not ripe for litigation.

In paragraphs 40, 41, 42, and 43 of Plaintiff's Complaint, he cites an entirely different OIG investigation not initiated by Plaintiff, brought by a different individual regarding a different set of alleged facts and circumstances. ECF 1 at 12. In Plaintiff's opposition to MSA's motion to strike, he argues that these paragraphs are just "background" facts and thus should not be stricken. ECF 15 at 1. However, in the Complaint, Plaintiff lists these facts under a section titled "BACKGROUND FACTS SPECIFIC TO PROTECTED ACTIVITY." ECF 1 at 12. These are not just "background facts." Rather, these are prejudicial and extraneous "facts" that Plaintiff seeks to use to "bear directly on the ultimate facts at issue" in this matter. These are not Plaintiff's "facts," but "facts" that were alleged in an entirely different OIG investigation regarding a different set of alleged facts and circumstances.

In paragraph 44 of Plaintiff's Complaint, he alleges disclosures that do <u>not</u> appear anywhere in his June 2019 Hotline Report or either of his interview records with the OIG. In Plaintiff's opposition to MSA's motion to strike, he argues that these paragraphs are just

"background" facts and thus should not be stricken. ECF 15 at 1. However, in the Complaint, Plaintiff lists this paragraph under a section titled "PROTECTED ACTIVITIES." Nothing in paragraph 44 is "background" or "summary" information as it is included in Plaintiff's "protected activities" section, which Plaintiff intends to rely on and "bear[s] directly on the ultimate facts at issue." *Iovino*, 600 F.Supp.3d at 622. These "facts" were not administratively decided and therefore should not be permitted in the Complaint. Allowing claims into this Court that have not been brought before DoS OIG is prejudicial to MSA as Plaintiff has failed to follow proper procedure and forces MSA to litigate claims not ripe for litigation.

For all the reasons stated above, paragraphs 1, 26, 40–44, and 69 should be stricken from Plaintiff's Complaint.

**b. Any Information Included in Plaintiff's Complaint that Was Not Administratively Exhausted at DoS OIG Must be Stricken from the Complaint.**

Plaintiff argues that ¶¶ 44–47 should not be stricken as they are "facts surrounding his protected activities." ECF 15 at 9. Specifically, Plaintiff argues ¶¶ 44–47 should not be stricken for four reasons, which we address below.

**i. Plaintiff's June 2019 Hotline Report and the OIG's Records of Plaintiff's Two Interviews Are the Three Documents That Form the Basis of Plaintiff's Claims, and Alone Can Determine Whether Plaintiff Exhausted His Administrative Remedies.**

In his response to MSA's motion to strike, Plaintiff states that MSA only cites a "tiny subset of documents in the OIG file that were not created by Plaintiff Lancaster, but rather presumably authored by the OIG." ECF 15 at 2, 9. Further, Plaintiff argues that because he "did not author either of the two Interview Notes" MSA should not be able to "claim[] that he should be held responsible for what the OIG chose to record." ECF 15 at 9. Both of these arguments are meritless.

In its Motion to Strike, MSA cites to Plaintiff's:

1. June 2019 Hotline Report;
2. October 2019 Record of Interview with OIG; and
3. February 2020 Record of Interview with OIG.

These are the *only* documents in the OIG Administrative Record where Plaintiff had the opportunity to present, discuss, and explain his claims. Presumably, anything that Plaintiff told the OIG was included in these three documents which form the basis of his claims. The content of these three documents is determinative of the question of whether *Plaintiff* exhausted his administrative remedies. The administrative record contains all of the documents the OIG relied upon in making its determination and is the only set of documents that the opposing party (in this case, MSA) can see.

In his June 2019 Hotline Report, Plaintiff alleged that MSA terminated him because he participated in the Iovino OIG Complaint investigation. ECF 9-2. Plaintiff alludes to his participation in the OIG's investigation but never explains what he said to the OIG, who he spoke with at the OIG, or even what was discussed with the OIG. *Id.* Plaintiff only states that he "cooperated with the OIG" and spoke to investigators about "different aspects" of the Iovino OIG Complaint. *Id.* Plaintiff then explains his version of the facts surrounding his termination. *Id.*

According to the October 2019 Record of Interview, during the October 2019 Interview, Plaintiff discussed his employment duties were with MSA, an incident surrounding validation issues in 2016, his acknowledgment that he participated in the OIG investigation relating to Iovino and MSA's express order to "be honest and talk to the OIG investigators," the allegations of test tampering, his termination from MSA, and the expansion of MSA. ECF 9-3. Nowhere in the October 2019 Record of Interview does Plaintiff discuss anything relating to what he said to the

OIG, who he spoke with at the OIG, or even what was discussed with the OIG during the Iovino OIG Complaint investigation. *Id.*

According to the February 2020 Record of Interview, during the February 2020 Interview, Plaintiff discussed MSA's Code of Conduct, his administrative leave, MSA's guidance for validators, DoS's Loss of Confidence in him, his prior working relationships, his discussion with OIG during the Iovino OIG Complaint investigation about "the health and wellness of the dogs," his relationship with certain individuals, his termination from MSA, and his performance reviews. ECF 9-4. The only part of this February 2020 Record of Interview relating to specific "disclosures" Plaintiff made to the OIG during the Iovino OIG Complaint investigation is the "health and wellness of the dogs." *Id.* No other information relating to any sort of "disclosure" was mentioned.

The only whistleblower reprisal claims properly before this Court are those for which DoS has made a final determination. DoS's determination focused solely on the whistleblower reprisal claims outlined in *Plaintiff's* June 2019 Hotline Report, which does not include any of the information Plaintiff now alleges in his Complaint. As such, ¶¶ 44–47 should be stricken in their entirety.

**ii. Plaintiff's Argument that the OIG Already Had the Facts, and Therefore Plaintiff (Somehow) Did Not Need to Include Facts in His Hotline Report Undermines the Purpose of 41 U.S.C. § 4712.**

Plaintiff argues that the OIG already had the "facts" surrounding his protected disclosures because he "had already reported about the substance of those disclosures in 2018 and 2019 in the context of the OIG investigating Dr. Iovino's complaint[.]" ECF 15 at 9. This argument undermines the very purpose of 41 U.S.C. § 4712, which states "the Inspector General shall investigate the **complaint** and, upon completion of such investigation, submit a report of the findings of the investigation to the person, the contractor, subcontractor, grantee, subgrantee, or

personal services contractor concerned, and the head of the agency." 41 U.S.C. § 4712(b)(1) (emphasis added).

DoS OIG's investigation is based on the complaint that the whistleblower submits. Neither DoS OIG nor the entity it is investigating can assume that Plaintiff *meant* to include facts in an entirely different investigation (of a different person), or *intends* to rely on facts that Plaintiff chose not to include in his complaint. Plaintiff should not be allowed to choose to omit "facts" from his complaint to DoS OIG, argue those omitted "facts" in his Complaint in this Court, and then argue that they exist, but only in another person's OIG investigation. Allowing such conduct would eviscerate the 41 U.S.C. § 4712 requirement that Plaintiff exhaust all administrative remedies before bringing the issue to a district court.

As such, ¶¶ 44–47 should be stricken in their entirety.

**iii. The March 2, 2021 Report of Investigation Boosts MSA's Argument that Plaintiff Failed to Exhaust His Administrative Remedies.**

Plaintiff insists that MSA intentionally "ignores" the March 2, 2021 Report of Investigation written by OIG's Jeffrey D. McDermott (the "Report of Investigation").[3] ECF 15 at 2; ECF 15-1. MSA does not ignore the Report of Investigation. Rather, it finds it entirely unhelpful to Plaintiff's claim, as the Court can now see. While the Report of Investigation makes a broad statement that Plaintiff participated "in a March 2018 OIG Interview concerning allegations of gross mismanagement and fraud" which "constitutes a protected disclosure," it lacks any detail as to the sum and substance of those protected disclosures. ECF 15-1 at 6.

---

[3] After the Report of Investigation was submitted, the case went into DoS's hands for further investigation, who found that the Report of Investigation was wrongly decided as MSA submitted clear and convincing evidence that it would have terminated Plaintiff even in the absence of any disclosures. Complaint ¶ 7. The order from DoS denied Plaintiff relief on April 28, 2022. *Id.*

Plaintiff argues that the Report of Investigation "demonstrates clearly that the Agency investigation encompassed factual allegations that Defendant now challenges in its Motion." ECF 15 at 9. Specifically, Plaintiff argues that the following statement by the OIG is what "demonstrates clearly" the sufficiency of facts Plaintiff includes in his Complaint:

> Mr. Lancaster's participation in a March 2018 OIG interview concerning allegations of gross mismanagement and fraud constitute a protected disclosure because the information was given to the Office of Inspector General, a covered entity, and dealt with information that he reasonably believed to be evidence of gross mismanagement of a Federal contract, as well as violations of law, rule, or regulation related to a Federal contract. For example, Mr. Lancaster provided information to OIG that resulted in a $240,000 recovery under the Program Fraud Civil Remedies Act.

ECF 15 at 9–10. Plaintiff similarly argues that ¶ 47 of the Complaint is sufficiently pled because he states that he "spoke with a member of the House Oversight Committee." ECF 15 at 9–10.

As MSA explains in its original brief, Lancaster alludes to his participation in the investigation in his OIG Hotline Report (ECF 9-2), in both of his interviews with the OIG (ECF 9-3; ECF 9-4) but he *never* explains what he said to the OIG, who he spoke with at the OIG, or even what was discussed with the OIG. Instead, Lancaster attempts to piggyback off another individual's OIG hotline report and investigation (the Iovino OIG Complaint) by bringing in facts and circumstances that are irrelevant to this matter and were not administratively exhausted during *his* OIG investigation. *See, e.g.*, ECF 9-2, 9-3, 9-4.

As acknowledged in MSA's Motion to Strike, Plaintiff makes only two vague statements in his June 2019 Hotline Report, the October 2019 Interview, or the February 2020 Interview which are remotely relevant to this matter. In Lancaster's June 2019 Hotline Report, he mentions speaking to the House Oversight Committee (about what, he does not say) and he briefly mentions the "health and wellness of the dogs" in his February 2020 Interview. ECF 9-2, 9-4. Plaintiff argues these vague and anemic references are strong enough to support the present Complaint. They are

not. None of the allegations Plaintiff makes in ¶¶ 1, 26, 40–47, and 69 of his Complaint appear in the documents in which *he* informed the DoS OIG of his allegations. This is why the exhaustion doctrine exists. *See e.g.*, *Lucero v. Soc. Sec. Admin.*, No. A-22-CV-1229-LY-ML, 2023 WL 3035441, at *2 (W.D. Tex. Feb. 3, 2023) (finding a plaintiff may not clog the court with meritless cases that have not exhausted all administrative remedies); *Emrit v. Bd. of Immigr. Appeals*, No. 2:22-CV-00110, 2022 WL 4287659, at *6–7 (S.D. W. Va. Mar. 31, 2022) (finding plaintiff's claims "frivolous" when plaintiff failed to exhaust its administrative remedies, which clogged the court with "meritless litigation"). Otherwise, Plaintiff could make whatever allegations suit him in his Complaint, and argue that those allegations *may* have been discussed with the OIG at some point (which here, Plaintiff admits, was only discussed during someone else's OIG investigation). *See* ECF 15 at Section III(B) ("[Plaintiff] had already reported about the substance of [his] disclosures in 2018 and 2019 in the context of the OIG investigating Dr. Iovino's complaint.").

## III. CONCLUSION

For all the reasons stated herein, Defendant MSA respectfully requests that this Court grant its motion to strike any allegations that Plaintiff makes in his Complaint that were not administratively exhausted at DoS OIG should be stricken. In particular, Defendant requests that the Court strike paragraphs 40, 41, 42, and 43 of the Complaint, where Plaintiff cites an entirely different OIG investigation; paragraphs 44, 45, and 46 of the Complaint, where Plaintiff alleges disclosures that do <u>not</u> appear anywhere in his June 2019 Hotline Report or either of his interviews with the OIG; and paragraphs 1, 26, 47, 69 of the Complaint, where Plaintiff alleges that he made disclosures in his June 2019 Hotline Report that do not exist. As such paragraphs 1, 26, 40–47, and 69 should be stricken in their entirety.

Because these allegations were not raised and/or decided at the administrative level, MSA respectfully requests the Court direct Plaintiff to submit an amended Complaint removing the offending matter and focusing solely on the narrow issues he brought to the DoS OIG. Plaintiff's Complaint should also be amended to remove any factual allegations improperly pled.

Respectfully submitted,

Date: February 13, 2024

*/s/ Ryan C. Berry*

_______________________________

Ryan C. Berry (VSB 67956)
Daniel S. Ward (VSB 45978)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
ryan@wardberry.com
dan@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Nate L. Adams III
Nate L. Adams III, P.C.
ADAMS AND ASSOCIATES
11 South Cameron Street
Winchester, VA 22601
(504) 667-1330
nadams@nadamslaw.com

Stephani L. Ayers
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K St. NW, Suite 1100
Washington, DC 20006
(813) 382-7865
stephani@whistleblowerdefenders.com


*/s/ Ryan C. Berry*

__________________________________

Ryan C. Berry