**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **GARRETT LANCASTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 5:23-CV-00063-EKD** |
| **v.** | ) | |
| | ) | |
| | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF DEFENDANT'S** |
| **MICHAEL STAPLETON ASSOCIATES, LTD.,** | ) | **MOTION FOR A** |
| **d/b/a MSA SECURITY, INC.** | ) | **CONFIDENTIALITY ORDER** |
| | ) | **UNDER FEDERAL RULE OF** |
| | ) | **CIVIL PROCEDURE 26(c)** |
| **Defendant.** | ) | |

Respectfully submitted,

Date: December 13, 2024

*/s/ Daniel S. Ward*

Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Padgett (VSB 96177)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 3

III. LEGAL STANDARD ........................................ 4

IV. ARGUMENT ........................................ 5

A. A Confidentiality Order Is Required to Preserve the Confidentiality of DoS's Sensitive Information Created Pursuant to DoS/MSA Contract ........ 5

B. A Confidentiality Order is Necessary Pursuant to DoS's *Touhy* Regulations ........................................ 6

C. DoS's *Touhy* Regulations are Clear and Unambiguous ........................................ 8

1. DoS *Touhy* Regulations Apply to Current and Former "Employees" of DoS and MSA ........................................ 9

2. The Definition of "Employee" As Outlined in DoS Touhy Regulations Includes Contractors ........................................ 9

D. MSA Will be Prejudiced Without a Confidentiality Order ........................................ 11

E. Other Considerations ........................................ 12

1. Application of the *Touhy* Process ........................................ 12

2. This Issue Has Been Very Extensively Litigated In This Court, In a Case With Similar Facts, By The Same Exact Attorneys ........................................ 13

3. Counsel for Plaintiff Has Already Indicated That They Would Like to Share Information Learned Of In This Case With Other Clients And/Or Potential Clients ........................................ 15

V. CONCLUSION ........................................ 16

# TABLE OF AUTHORITIES

**Cases** **Page**

*Beach v Costco Wholesale Corp.,*
No. 5:18-cv-00092, 2019 WL 1495296 (W.D. Va. 2019) ....................4

*Conn. Nat'l Bank v. Germain,*
503 U.S. 249 (1992) ....................8

*Crespo v. Holder,*
631 F.3d 130 (4th Cir. 2011) ....................8, 9

*Hall v. McCoy,*
89 F. Supp. 2d 742 (W.D. Va. 2000) ....................8

*Iovino v. Michael Stapleton Associates, Ltd.,*
Case No. 5:21-cv-00064, 2024 WL 2412694 (W.D. Va. May 23, 2024) ....................15

*Iovino v. Michael Stapleton Associates, Ltd.,*
Case No. 5:21-cv-00064, 2024 WL 3520170 (W.D. Va. July 24, 2024) ....................15

*Johnson v. Garraghty,*
57 F. Supp. 2d 321 (E.D. Va. 1999) ....................8

*La. Dep't of Transp. & Dev. V. U.S. Dep't of Transp.,*
No. 15-2638, 2015 WL 7313876 (W.D. La. Nov. 20, 2015 ....................9

*Liptak v. Cnty.,*
No. 16-225 (ADM/JSM), 2016 WL 5662082 (D. Minn. Aug 24, 2016) ....................9

*McCauley v. Purdue Pharma, L.P.,*
224 F. Supp 2d 1066 (W.D. Va. 2002) ....................8

*Mickendrow v. Watner,*
No. 20-007 (JMV), 2021 WL 2821176 (D.N.J. July 7, 2021) ....................10

*Rubin v. United States,*
449 U.S. 424 (1981) ....................8

*Sigmon Coal Co., Inc. v. Apfel,*
226 F.3d 291 (4th Cir. 2000) ....................9

*Touhy v Ragen,*
340 U.S. 462 (1951) ....................1, 6, 7, 14

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am.*,
474 F. Supp. 2d 75 (D.D.C. 2007) ....................9

*U.S. ex rel. Roby v. Boeing Co.*,
189 F.R.D. 512 (S.D. Ohio 1999) ....................8

**Statutes and Rules**

22 C.F.R. § 172 ....................8, 10, 12, 14

22 C.F.R. § 172.1 ....................6, 9, 10

22 C.F.R. § 172.1 - 172.9....................6

22 C.F.R. § 172.3 ....................15

22 C.F.R. § 172.4 ....................7

22 C.F.R. § 172.5 ....................7, 8

22 C.F.R. § 172.7 ....................7

22 C.F.R. § 172.8 ....................1, 6, 11, 12

32 C.F.R. § 97.3 ....................9

32 C.F.R. § 1905.2 ....................9

45 C.F.R. § 2.2 ....................9

Fed. R. Civ. P 26(b) ....................6

Fed. R. Civ. P. 26(c) ....................1, 4, 16

Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA"), by counsel, respectfully submits this memorandum in support of its Motion for a Confidentiality Order Under Fed. R. Civ. P. 26(c).

## I. INTRODUCTION

MSA provides security, intelligence, and investigative services, including explosive detection canine screening services. To that end, MSA operates the Diplomatic Security Global Canine Services Center (formerly known as the Canine Validation Center[1] ("CVC")) in Winchester, Virginia to train explosive detection canines and their handlers in support of U.S. Department of State ("DoS") Contract Nos. SAQMMA16D0106 and 19AQMM22D0110 (the "DoS/MSA Contract"). Due to the sensitivity of the program and the services MSA is providing on behalf of DoS, the DoS/MSA Contract contains stringent confidentiality requirements. Specifically, DoS demands that "[a]ll documents and records (including photographs) generated during the performance of work under [the] contract shall be for the sole use of and become the exclusive property of the U.S. Government." **Exhibit A** (relevant excerpt of the DoS/MSA Contract).

Because MSA is a government contractor, MSA does not have the authority to produce DoS's documents or information to third parties without the Government's approval. *See* 22 C.F.R. § 172.8(a)(2). DoS can only approve the production of official documents and/or information through the DoS's formal "*Touhy*" process. *See* 22 C.F.R. § 172 *et seq.*; *see also Touhy v. Ragen*, 340 U.S. 462, 468 (1951) (requiring requestors of official government information to follow an agency's *Touhy* regulations when making their request(s) for official government information).

[1] MSA will refer to the Diplomatic Security Global Canine Services Center as the "CVC" to remain consistent with the acronyms used in this case thus far (ECF 26 at ¶ 2).

This position has been well established in *Iovino v. Michael Stapleton Associates, Ltd.*, Case No. 5:21-cv-00064 (the "*Iovino* Matter") at ECF 172, 177, which is discussed in greater detail below (*infra* Section IV.E.2). In fact, the confidentiality order proposed by MSA is substantively identical[2] to that entered in the *Iovino* Matter.

MSA therefore requires a confidentiality order in this case that allows DoS to review program-related documents and information requested by Plaintiff. Here, Counsel for Plaintiff is seeking to use DoS official information for use in his lawsuit. Specifically, Plaintiff is requesting: (1) program-related documents and information relating to the DoS's sensitive government program; and (2) deposition testimony of current and/or former MSA and/or DoS employees. *See* **Exhibit B** (Lancaster's 04/12/24 Discovery Requests); **Exhibit C** (Lancaster's 12/05/24 Notice of Proposed Depositions).

As discussed in detail below, a confidentiality order is necessary in this case because MSA would breach the DoS/MSA Contract if it is forced to produce DoS's documents and information without DoS's approval. Further, the DoS/MSA Contract concerns significant national security concerns, and thus DoS has an interest in overseeing the release of sensitive materials that may be sought in this case. Once a confidentiality order is in place, MSA will work diligently with DoS (who has already been apprised of this situation by MSA) to get documents, information, and deposition requests approved by DoS and produced to Plaintiff.

MSA respectfully requests the Court issue the requested confidentiality order.

---

[2] Other than the case caption, and name of the Plaintiff throughout, the confidentiality order proposed herein is identical to that which was entered in the *Iovino* Matter. As such, we are using the term "substantially identical."

## II. BACKGROUND

On January 3, 2024, counsel for MSA sent a proposed confidentiality order to counsel for Plaintiff given the nature of the dispute and the need for a confidentiality order to be in place early in the litigation to engage in effective discovery. **Exhibit D** (MSA's 01/03/24 Email to Counsel for Lancaster).

On February 12, 2024, counsel for Plaintiff sent a "revised" version of the confidentiality order that Plaintiff would be willing to stipulate to. This version deleted all references to the U.S. Government and did not allow DoS to review any documents prior to production. **Exhibit E** (Counsel for Lancaster's 02/12/24 Email).

On or about February 16, 2024, the Parties met and conferred relating to the upcoming Rule 16 Conference. During that discussion, MSA reiterated the need for a confidentiality order. Counsel for Plaintiff stated that it would only agree to a confidentiality order if it could share documents and/or information obtained in this case with other clients and/or potential clients.

On March 21, 2024, MSA provided DoS with a copy of the DoS, Office of Inspector General's ("OIG") Administrative Record in Case No. 2019-1385 (Lancaster's DoS OIG Investigation) for DoS's review. MSA provided DoS with a copy of this Administrative Record in anticipation of its use in this litigation and in anticipation of Plaintiff's request for the same.[3]

On April 12, 2024, counsel for Lancaster sent MSA its first set of interrogatories and first set of requests for production of documents. Exhibit B. In MSA's May 13, 2024 responses and objections, MSA reiterated the need for a confidentiality order to be in place before MSA could

[3] MSA is informed that DoS is currently reviewing the Administrative Record but has not completed that review.

produce any program-related materials to Plaintiff. **Exhibit F** (MSA's 05/13/24 Responses & Objections).

On July 19, 2024, counsel for Plaintiff completely changed its tune and stated that Plaintiff will not agree to *any* confidentiality order as they do not believe "that anything is confidential." **Exhibit G** (Counsel for Lancaster's 07/19/24 Email).

Unable to agree on a proposed confidentiality order to present to the court, the Parties submitted a Joint Statement Regarding Discovery Dispute to the Court on July 31, 2024 (ECF 28), pursuant to the Court's procedures at that time (ECF 23 ¶ 15 (requiring Parties to request a conference with Judge Hoppe for "[a]ll nondispositive pretrial motions and issues.")).

On December 5, 2024, the Court held a status conference with the parties and discussed, *inter alia*, the Parties July 31, 2024 Joint Statement. There, the Court ordered MSA to file a motion for a confidentiality order by December 13, 2024 (ECF 38).

## III. LEGAL STANDARD

Under Fed. R. Civ. P. 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken." "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . prescribing a discovery method other than the one selected by the party seeking discovery . . . [or] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). "The movant bears the burden of establishing 'good cause' by showing that 'specific prejudice or harm will result if no protective order is granted.'" *Beach v. Costco Wholesale Corp.*, No. 5:18-cv-00092, 2019 WL 1495296, at *2 (W.D. Va. 2019) (finding good cause to implement

a protective order). As discussed herein, specific prejudice or harm will result (both to MSA and, indeed, the U.S. Government) if no protective order is granted.

## IV. ARGUMENT

### A. A Confidentiality Order is required to Preserve the Confidentiality of DoS's Sensitive Information created pursuant to DoS/MSA Contract.

The DoS/MSA Contract contains stringent confidentiality requirements, including:

> The Contractor and its employees shall exercise the utmost discretion in regard to all matters relating to their duties and functions. They shall not communicate to any person any information known to them by reason of their performance of services under this contract which has not been made public, except in the necessary performance of their duties or upon written authorization of the Contracting Officer. **All documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government**.

Exhibit A (emphasis added).

Plaintiff argues that the DoS/MSA Contract merely contains "blanket assertions to confidentiality" and therefore no confidentiality agreement is required or necessary in this case. ECF 28 at 1. Instead, Plaintiff suggests that MSA "point to actual sensitive or confidential national security information." This suggestion is absurd. It betrays Plaintiff's inability or unwillingness to take seriously the real and well-established DoS and MSA sensitivities that warrant the entry of a reasonable (and substantively identical to that litigated in the *Iovino* Matter) confidentiality order.

MSA cannot simply "point to actual sensitive or confidential national security information" to "prove" to Plaintiff that confidentiality is necessary. MSA does not have the authority to produce program-related materials to Plaintiff without DoS's approval. Doing so would breach the DoS/MSA Contract and potentially jeopardize DoS's legitimately held national security concerns. MSA is required to "exercise the utmost discretion" in safeguarding non-public knowledge. **Exhibit A.** Importantly, "[a]ll documents and records (including photographs) generated during

the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government." *Id.* Therefore, **all** documents and records generated at the CVC are the "exclusive property of the U.S. Government." *Id.* The U.S. Government has the sole ability to determine whether a document is confidential and/or needs redactions to protect national security.

MSA respectfully requests the Court issue the requested confidentiality order.

### B. A Confidentiality Order is Necessary Pursuant to DoS's *Touhy* Regulations.

As stated above, and as successfully argued by counsel for MSA in the *Iovino* Matter[4], MSA is bound by DoS's *Touhy* regulations as a contractor to DoS. *See* 22 C.F.R. §§ 172.1 – 172.9; *see also Touhy v. Ragen*, 340 U.S. 462, 468 (1951). DoS *Touhy* regulations include contractors within the definition of employee at § 172.1(b) ("the term employee includes . . . United States nationals, foreign nationals, and **contractors**.") (emphasis added). Because MSA is a government contractor, MSA does not have the authority to produce DoS's documents or information to third parties without the Government's approval. *See* 22 C.F.R. § 172.8(a)(2).

---

4 *See* ECF No. 97 at 2–3 (concluding that the DoS's *Touhy* regulations apply to Rule 34 requests served on MSA if those requests sought documents "generated during the performance of work under" the DoS/MSA Contract); ECF 172 at 7–8 ("MSA has shown good cause for a protective order requiring the parties in this case to follow [DoS's] *Touhy* regulations whenever 'official Department information is sought, through testimony or otherwise, by a request or demand,' for discovery otherwise allowed by Rule 26(b)(1).") (internal citations omitted); ECF 172 at 13 ("Any party that seeks to obtain deposition testimony from current and former State Department employees or contractors, including current or former MSA employees, regarding information related to MSA's contract with the State Department shall follow the State Department's Touhy regulations."); ECF 177 at 6 ("The regulations are valid and unambiguously apply to her requests."); ECF 177 at 7 ("[DoS's] *Touhy* regulations are clear on their face that they encompass deposition requests like Iovino's, so the court must apply the regulations as written rather than contorting their language to reach the anomalous result Iovino suggests.").

In fact, DoS has specific procedures for responding to requests for official DoS information (including requests that come through litigation, such as requests for discovery and depositions) and strictly prohibits a contractor from responding to requests for DoS's information:

> (a) No employee of the Department shall, in response to a demand or request in connection with any litigation, whether criminal or civil, provide oral or written testimony by deposition, declaration, affidavit, or otherwise concerning any information acquired while such person is or was an employee of the Department as part of the performance of that person's official duties or by virtue of that persons's official status, unless authorized to do so by the Director General of the Foreign Service and Director of Personnel (M/DGP) or the Legal Adviser (L), or delegates of either, following consultation between the two bureaus, or as authorized in § 172.4(b).
>
> . . .
>
> (c) No employee shall, in response to a demand or request in connection with any litigation, produce for use at such proceedings any document or any material acquired as part of the performance of that employee's duties or by virtue of that employee's official status, unless authorized to do so by the Director General of the Foreign Service and Director of Personnel, the Legal Adviser, or the Assistant Secretary of State for Consular Affairs, or the delegates thereof, as appropriate, following consultations between the concerned bureaus.

*See* 22 C.F.R. § 172.4.

Section 172.5 provides DoS's "[p]rocedure when testimony or production of documents is sought." Specifically, § 172.5(a) provides:

> If official Department information is sought, through testimony or otherwise, by a request or demand, the party seeking such release or testimony **must** (except as otherwise required by federal law or authorized by the Office of the Legal Adviser) **set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought**. Subject to § 172.7, Department employees may only produce, disclose, release, comment upon, or testify concerning those matters which were specified in writing and properly approved by the appropriate Department official designated in § 172.4. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). The Office of the Legal Adviser may waive this requirement in appropriate circumstances.

*Id.* at § 172.5(a).

As such, MSA is seeking a confidentiality order to enforce the DoS's *Touhy* regulations outlined in 22 C.F.R. Part 172. Plaintiff is seeking official DoS information through documents, information, and deposition testimony. MSA is not denying Plaintiff's right to any documents, information, or the ability to take depositions. However, MSA does not have the authority to produce documents and information or approve depositions of current and/or former MSA employees (or DoS employees) without DoS's approval. A *Touhy* request must be submitted to DoS (pursuant to § 172.5) by Plaintiff as Plaintiff is requesting DoS's official information.

DoS is well within its rights to properly ensure that the requested testimony does not contain confidential information, information that could threaten national security, or privileged state secrets. *See e.g.*, *U.S. ex rel. Roby v. Boeing Co.*, 189 F.R.D. 512, 517 (S.D. Ohio 1999) (finding that the Government can "assert a legitimate evidentiary privilege, such as a privilege concerning state or military secrets."). The requested confidentiality order assures that the *Touhy* process be followed.

**C. DoS's *Touhy* Regulations are Clear and Unambiguous.**

When a statute is clear and unambiguous, "the court's interpretative task is at an end, and the statute must be applied in accordance to its plain meaning." *McCauley v. Purdue Pharma, L.P.*, 224 F. Supp. 2d 1066, 1069 (W.D. Va. 2002) (citing *Hall v. McCoy*, 89 F. Supp. 2d 742, 744–45 (W.D. Va. 2000); *Johnson v. Garraghty*, 57 F. Supp. 2d 321, 325–26 (E.D. Va. 1999)). The court may not look past the plain meaning of the statute. *Id.*; *see also Crespo v. Holder*, 631 F.3d 130, 136 (4th Cir. 2011) ("The Supreme Court has stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–254 (1992) (quoting *Rubin*

*v. United States*, 449 U.S. 424, 430, (1981))). If the plain language of a statute is unambiguous, "we are not simply free to ignore unambiguous language because we can imagine a preferable version." *Id.* (quoting *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 308 (4th Cir. 2000)). In *Crespo*, the Government asked the Court "to 'improve the statute—to amend it, really' to include" the plaintiff's situation. *Id.* That is neither within the judiciary's power, nor was the court in *Crespo* inclined to do so. *Id.*

**1. DoS *Touhy* Regulations Apply to Current and Former "Employees" of DoS and MSA.**

In *La. Dep't of Transp. & Dev. v. U.S. Dep't of Transp.,* the court recognizes that, although "[t]here is no binding precedent addressing whether agency heads have the authority to extend *Touhy* regulations to apply to the testimony of former employees," some agency *Touhy* regulations (including DoS's) specifically include current and former employees in its definition of "employee." *See* No. 15-2638, 2015 WL 7313876, at *6–7 (W.D. La. Nov. 20, 2015) (citing 22 C.F.R. § 172.1(b) (DoS); 32 C.F.R. § 97.3(b) (Department of Defense); 32 C.F.R. § 1905.2(c) (Central Intelligence Agency); 45 C.F.R. § 2.2 (Department of Health and Human Services)); *see also U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 474 F. Supp. 2d 75 (D.D.C. 2007) ("The valid *Touhy* regulations adopted by HHS require that a party first seek agency approval before attempting to secure the testimony of a current or former agency employee.").

**2. The Definition of "Employee" As Outlined in DoS *Touhy* Regulations Includes Contractors.**

In *Liptak v. Cnty.*, the court found that the plaintiff failed to comply with the U.S. Department of Health and Human Services' ("HHS") *Touhy* regulations by serving a subpoena on its federal contractor rather than on HHS itself. *See* No. 16–225 (ADM/JSM), 2016 WL 5662082, at *9, 13 (D. Minn. Aug. 24, 2016). Much like this case, in *Liptak*, HHS had a contract with the

Minnesota Department of Health ("MDH"), a federal contractor. *Id.* at *9. The agreement between HHS and MDH "states that MDH acts on behalf of the Secretary of []HHS as a federal contactor, and the Secretary is the real party in interest in carrying out the certified program." *Id.* Therefore, HHS "exerts significant control over the conduct of MDH in the performance of its survey responsibilities." *Id.* Because the plaintiff was requesting information that was "property of []HHS" plaintiff must "follow[] the applicable *Touhy* regulations" or submit a FOIA request. *Id.* at *13.

Likewise, in *Mickendrow v. Watner*, a company called Novitas Solutions, Inc. was a federal contractor to HHS. No. 20-007 (JMV), 2021 WL 2821176, at *1 (D.N.J. July 7, 2021). After receiving a subpoena seeking documents and the deposition of an employee, HHS directed Novitas Solutions, Inc. to advise the requestor of the documents and deposition to submit a *Touhy* request pursuant to HHS's *Touhy* regulations. *Id.* The court found that "Plaintiff, as the party seeking testimony, was required to satisfy the three criteria of HHS's *Touhy* regulations." *Id.* at *4.

DoS's *Touhy* regulations are clear. Congress's intent is clear. There is nothing to suggest that DoS's *Touhy* regulations are invalid. 22 C.F.R. § 172.1(a) specifically states that "all employees and former employees" including "contractors" are included in DoS's definition of "employee" for purposes of § 172.

DoS must then determine whether to produce or withhold the information, and whether compliance with the demand or request would "violate a statute or a rule of procedure;" "violate a specific regulation or executive order;" "reveal information properly classified in the interest of national security;" "reveal confidential commercial or financial information or trade secrets without the owner's consent;" "reveal the internal deliberate processes of the Executive Branch;"

or "potentially impede or prejudice an on-going law enforcement investigation." *See* 22 C.F.R. § 172.8.

The fact of the matter remains the same – MSA is not in a position to offer current and/or former DoS or MSA employees (who are DoS contractors) to discuss sensitive DoS information without DoS's approval. In order to gain approval, Plaintiff is required to submit a *Touhy* request as discussed above.

**D. MSA Will be Prejudiced Without a Confidentiality Order.**

For all the reasons discussed above, good cause exists for a confidentiality order because the requested discovery is an annoyance, oppressive, and/or unduly burdensome or expensive without following DoS's *Touhy* regulations.

Further, good cause exists for a protective order because MSA will suffer specific prejudice or harm if the court does not grant the confidentiality order. MSA risks violating its contract with DoS if it produces DoS documents and information and/or provides current and/or former DoS employees or MSA employees (who are DoS contractors) for depositions without DoS approval. DoS is not able to approve the requested documents, information, or deposition testimony without Plaintiff submitting a *Touhy* request. If the Court does not grant a confidentiality order, MSA risks breaching its contract with DoS and subjecting itself to the repercussions that come with breaching a U.S. Government contract. Additionally, permitting Plaintiff to circumvent the well-established *Touhy* process implicates substantial national security issues as the contract at MSA/DOS Contract *sub judice* involves a sensitive government program.

MSA respectfully requests the Court issue the requested confidentiality order.

### E. Other Considerations.

#### 1. Application of the *Touhy* Process.

MSA has consulted with DoS attorneys. DoS has reiterated[5] that DoS requires full compliance with DoS's *Touhy* regulations set forth in 22 C.F.R. Part 172, and that MSA is not permitted to produce DoS's official documents, information, and/or deposition testimony without DoS's approval. *See Iovino* Matter ECF 60-2 (09/16/22 Letter from DoS to the Parties).

Indeed, earlier in this litigation, MSA submitted a *Touhy* request to DoS to share documents from Plaintiff's administrative record from his OIG Whistleblower Case No. 2019-1385 for the purposes of a motion to strike. DoS authorized that disclosure.

To the extent that Plaintiff seeks program-related materials that fall outside of the administrative record, a further *Touhy* request would be required that provides the Government with the requested proposed documents and/or information that are relevant to Plaintiff's discovery requests. As part of evaluating that request, DoS will analyze the factors set out in 22 C.F.R. Part 172.8. For example, DoS will consider whether authorization of the information sharing "is appropriate under the relevant substantive law concerning . . . disclosure of information" and also whether authorization would "have an adverse effect on performance by the Department of its mission and duties." DoS will evaluate if the request seeks sensitive DoS information, and MSA

---

[5] *See Iovino* Matter at ECF 90 at 1 ("Defendant MSA is a contractor for the United States Department of State (DoS). As part of its contract with DoS, MSA's documents, including its emails and other electronically stored information, become records of DoS."); *Iovino* Matter at ECF 157 at 4 ("To the extent these depositions seek DoS official information, DoS's Touhy regulations apply, and DoS is entitled to assert any necessary privileges over that information and otherwise ensure that confidential and sensitive information is not made public."); *Iovino* Matter at ECF 165 at 13 ("As it has continuously stated throughout this litigation, including with respect to Iovino's Touhy objections over the documents, DoS's interest in the Touhy requests is in protecting any privileged and/or non-public, sensitive DoS official information from being disclosed or made public, potentially putting federal employees, officials, dignitaries, and others in danger around the globe.").

understands that the existence of a confidentiality order would inform that analysis. If DoS authorizes the disclosures, MSA can then produce those approved documents and/or information to Plaintiff.

This procedure was followed in the *Iovino* Matter, which involved the same counsel, involved similar issues, and which resulted in the successful review and production of over 9,000 relevant documents to the plaintiff in that matter.

**2. This Issue Has Been Extensively Litigated In This Court, In a Case with Similar Facts, By The Same Exact Attorneys.**

As mentioned above, MSA is proposing substantially identical confidentiality order terms in place in the *Iovino* Matter (*Iovino* Matter at ECF 67), where the same issues were exhaustively litigated (see various ECF nos. listed below) and the Court ultimately entered a confidentiality order with language identical to that proposed here by MSA.

Due to the similarity of claims, counsel, and U.S. Government sensitivities, Defendant prepared (attached hereto as Exhibit A) a proposed confidentiality order substantively identical to the confidentiality order entered by this Court in *Iovino* Matter. Before the confidentiality order was entered in the *Iovino* Matter, the need for a confidentiality order and the exact language it should contain was *extensively* litigated by the Parties. To reiterate just how extensive the litigation was surrounding this issue in the *Iovino* Matter, MSA directs the Court to the following filings in the *Iovino* Matter:

- ECF 64 – MSA's proposed confidentiality order, filed on October 12, 2022;
- ECF 65 – Iovino's objections to MSA's proposed confidentiality order, filed on October 13, 2022;
- ECF 66 – The Court's October 13, 2022 oral Order granting MSA's motion for a protective order;
- ECF 67 – The Confidentiality Order, entered by the Court on October 13, 2022;
- ECF 68 – Iovino's October 14, 2022 motion for entry of Rule 72(a) written order (i.e., motion to amend the Confidentiality Order);

- ECF 69 – MSA's October 25, 2022 opposition to Iovino's motion to amend the Confidentiality Order;
- ECF 70 – Iovino's October 25, 2022 reply in support of her motion to amend the Confidentiality Order;
- ECF 71 – Iovino's October 27, 2022 Rule 72(a) objections to the Magistrate's Confidentiality Order;
- ECF 80 – The Court's November 8, 2022 oral Order directing parties to address good cause for the inclusion of Paragraph 2(a)(iii) of the Confidentiality Order;
- ECF 81 – November 8, 2022 Joint Statement regarding the parties' continued disputes on the Confidentiality Order;
- ECF 85 – MSA's November 15, 2022 response per oral order ECF 80 addressing good cause for the inclusion of Paragraph 2(a)(iii) of the Confidentiality Order;
- ECF 87 – Iovino's November 21, 2022 response to MSA's response addressing good cause for the inclusion of Paragraph 2(a)(iii) of the Confidentiality Order;
- ECF 90 – DoS's Statement of Interest, filed on December 6, 2022;
- ECF 93 – The Court's December 12, 2022 Memorandum Opinion denying Iovino's motion to amend the confidentiality order;
- ECF 94 – The Court's December 12, 2022 Order denying Iovino's motion to amend the protective order and overruling Iovino's objections to Judge Hoppe's ruling;
- ECF 151 – MSA's January 23, 2024 motion for a protective order;
- ECF 157 – DoS's February 9, 2024 statement of interest;
- ECF 162 – Iovino's March 4, 2024 opposition to MSA's motion for a protective order;
- ECF 165 – DoS's March 21, 2024 reply in support of its statement of interest;
- ECF 166 – MSA's March 21, 2024 reply in support of its motion for a protective order;
- ECF 172 – The Court's May 23, 2024 Memorandum and Opinion;
- ECF 174 – Iovino's June 7, 2024 corrected Rule 72(a) objections;
- ECF 175 – MSA's June 20, 2024 opposition to Iovino's Rule 72(a) objections; and
- ECF 177 – The Court's July 24, 2024 Memorandum Opinion.

Just as is the case in the *Iovino* Matter, MSA is operating under the DoS/MSA Contract that specifically requires MSA to preserve the confidentiality of all information relating to the DoS program that MSA is performing services on. MSA is a federal contractor that may not disclose sensitive DoS information without DoS's approval. To obtain approval for the release of official government information, the *Iovino* Court established that a plaintiff must follow an agency's *Touhy* regulations.[6] *See* 22 C.F.R. Part 172; *Touhy v. Ragen*, 340 U.S. 462, 468 (1951); *see, e.g.*,

[6] Judge Hoppe's and Judge Cullen's rulings relating to the application of DoS's *Touhy* regulations in the *Iovino* Matter are currently on appeal at the U.S. Court of Appeals for the

*Iovino v. Michael Stapleton Assocs.*, No. 5:21-cv-00064, 2024 WL 3520170 (W.D. Va. July 24, 2024) (affirming Judge Hoppe's May 23, 2024, Memorandum Opinion and Order (ECF 172)); *Iovino v. Michael Stapleton Assocs.*, No. 5:21-cv-00064, 2024 WL 2412694 (W.D. Va. May 23, 2024) (requiring the plaintiff to abide by DoS's Touhy regulations when seeking official DoS information).

Here, Lancaster is demanding and/or requesting official DoS information. Under 22 C.F.R. § 172.3, that demand and/or request must be directed to DoS. To the extent that MSA wants to request and/or use official information, it would likewise make a *Touhy* request to DoS. In fact, MSA has done so many times in the *Iovino* Matter and has already done so in this case. That said, the actual requester of official DoS information (be that MSA or Lancaster, depending) should be the one charged with making the actual *Touhy* request, as that Party is best suited to know what is being requested and the purpose for which the request is being made.

**3. Counsel For Plaintiff Has Already Indicated That They Would Like To Share Information Learned Of In This Case With Other Clients And/Or Potential Clients.**

There is another important reason for entering a confidentiality order in this case: Plaintiff's counsel, who are likewise counsel in the *Iovino* Matter, have already stated (just as they did in the *Iovino* Matter) that they are entitled to share all documents and information discovered from MSA (including all DoS documents and information) with other clients and/or potential clients. Exhibit E at 3 (attempting to share information with "Iovino and Olech" who only one of which (Iovino)

---

Fourth Circuit. Counsel for Iovino (Lancaster's counsel) filed the notice of appeal on July 30, 2024, which opened Fourth Circuit Case No. 2024-1735. MSA filed a motion to dismiss on September 24, 2024. The Parties are waiting on the Fourth Circuit's ruling. Just like the *Iovino* Matter, and despite this Court's ruling on the subject, counsel for Lancaster continues to argue that DoS's *Touhy* regulations do not apply to their clients in private litigation. This is incorrect, ignores the *Iovino* Court's well-reasoned opinions, and appears to be an impatient effort to subvert the Fourth Circuit.

is an actual litigant against MSA at this time); Exhibit G at 1 ("[W]e don't agree that anything is confidential."). Plaintiff counsel's ability to share confidential DoS documents with other clients it represents would eviscerate the confidentiality clause in the DoS/MSA Contract. In essence, Plaintiff's counsel (or Plaintiff himself) would be able to share any confidential information with other putative plaintiffs not before this court. This is especially concerning to MSA when other clients of Plaintiff's counsel (Iovino) have admitted to leaking MSA's documents in the past. *See Iovino* Matter, ECF 93 at 2–3.

While Plaintiff's counsel might seek to make a cottage industry out of suing MSA, allowing the willy-nilly distribution of confidential information should not be tolerated by the Court (and indeed, while this may serve Plaintiff's counsel's interests, it does not serve Plaintiff's interests. *Iovino* Matter, ECF 172 at 13 (instructing Iovino to follow DoS's Touhy regulation process when seeking DoS information).

*     *     *     *     *

In light of the fact that the DoS/MSA Contract involves a sensitive government program, the benefits created by entering into a Confidentiality Order outweigh any burden on public access to the judicial process and increase the efficiency of this case moving forward.

## V. CONCLUSION

For all the reasons stated herein, Defendant, MSA, respectfully requests this Court grant its Motion for a Confidentiality Order Under Federal Rule of Civil Procedure 26(c).

Respectfully submitted,

Date: December 13, 2024

*/s/ Daniel S. Ward*

Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Padgett (VSB 96177)
WARD & BERRY, PLLC

1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Nate L. Adams III
Nate L. Adams III, P.C.
ADAMS AND ASSOCIATES
11 South Cameron Street
Winchester, VA 22601
(504) 667-1330
nadams@nadamslaw.com

Stephani L. Ayers
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K St. NW, Suite 1100
Washington, DC 20006
(813) 382-7865
stephani@whistleblowerdefenders.com

*/s/ Daniel S. Ward*
____________________________
Daniel S. Ward