**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

**GARRETT LANCASTER,**

*Plaintiff,*

v. Case No. 5:23-cv-00063-EKD

**MICHAEL STAPLETON ASSOCIATES,**
**LTD.,** d/b/a **MSA SECURITY, INC**.,

*Defendant.*

---

# PLAINTIFF'S OPPOSITION TO DEFENDANT MSA'S MOTION FOR A CONFIDENTIALITY ORDER

Stephani L. Ayers, *Pro Hac Vice*
Government Accountability Project
1612 K Street, N.W., Suite 1100
Washington, D.C. 20006
(813) 382-7865
stephani@whistleblowerdefenders.com

Nate L. Adams III, P.C. (VSB No. 20707)
ADAMS AND ASSOCIATES
11 South Cameron Street
Winchester, VA 22601 (540) 667-1330
nadams@nadamslaw.com

Attorneys for Mr. Lancaster

# TABLE OF CONTENTS

I. INTRODUCTION ........ 3

II. LOGIC AND FIVE SYLLOGISMS RENDER MSA'S POSITIONS ILLOGICAL ........ 4

III. FACTS REGARDING MSA'S IMPROPER REFUSAL TO PROVIDE DISCOVERY ........ 8

A. Plaintiff's First Set of Discovery Requests Under Rules 33 and 34 (ECF # 38-7): ........ 8

B. Plaintiff's Deposition Requests (ECF # 37-4): ........ 11

IV. THIS COURT SHOULD FOLLOW THE MENOCAL CASE, NOT IOVINO ........ 12

A. *Menocal v. GEO Grp., Inc*: ........ 14

B. *Iovino v. MSA*: ........ 15

V. RULE 26(C): GOOD CAUSE, AVERSION TO BLANKET ORDERS, AND THE FAILURE OF CONTRACT CLAUSES TO CREATE PRIVILEGES ........ 15

A. The "Good Cause" Requirement in Rule 26(c) Jurisprudence ........ 16

B. The Judicial Aversion to Blanket or Umbrella Protective Orders ........ 17

C. Failure of Contractual Clauses to Create Privileges or Override Federal Rules ........ 18

VI. MSA LACKS STANDING AND CONSTITUTIONAL AUTHORITY TO ASSERT TOUHY REGULATIONS THAT ONLY THE GOVERNMENT CAN ENFORCE ........ 20

A. MSA Lacks Standing to Assert Touhy Compliance in its Motion to Dismiss ........ 20

B. It is Unconstitutional to Allow MSA to Act in the Place of the State Department ........ 22

VII. CONCLUSION AND PRAYER FOR RELIEF ........ 23

## I. INTRODUCTION

This litigation arises out of Plaintiff's contention that Defendant Michael Stapleton Associates, Ltd. (MSA) terminated him because he disclosed or planned to disclose concerns about potential wrongdoing in the administration of a federal contract. Plaintiff contends that MSA's alleged retaliation contravenes federal whistleblower protections, specifically those aimed at safeguarding employees of government contractors who report fraud, waste, abuse, or other irregularities. In discovery, Plaintiff has sought a range of documents and communications shedding light on MSA's rationale for his discharge, on internal discussions about his whistleblower disclosures, and on whether MSA singled him out for retaliation. MSA responds by asserting that these materials, deemed "government property" under its contract with the Department of State (DoS), are immune from normal discovery. MSA also references Department of State Touhy regulations—rules setting how agencies handle subpoenas to agency employees or official records—to justify a broad protective order effectively cloaking the majority of relevant evidence. MSA has refused to produce even a single document.

This motion for a confidentiality order, if granted, would impose sweeping restrictions on Plaintiff's ability to see, use, or share key evidence. Yet the Department of State (DoS) itself has not intervened to assert any recognized privilege, nor has it filed any affidavit proclaiming these materials to be classified or otherwise protected

MSA's request for a confidentiality order is flawed on multiple fronts. First, under Rule 26(c), a party seeking a protective order must demonstrate "good cause" by showing specific harm that would result from open disclosure. Courts disfavor blanket or "umbrella" orders lacking particularized proof that place broad swaths of material off-limits to adversaries. MSA

offers no concrete evidence of any particular harm from letting Plaintiff see communications about his alleged whistleblower disclosures or the decision to terminate him.

Second, from a policy perspective, awarding a broad confidentiality order in a whistleblower retaliation case undermines the very reason that Congress passed statutes like 41 U.S.C. § 4712, which encourage employees in government contracting environments to report perceived abuses. Letting a contractor simply declare an entire domain of evidence out-of-bounds through indefinite references to "government property" or Touhy eviscerates those legislative objectives.

Third, separation-of-powers doctrines militate against letting a private contractor stand in the agency's shoes absent a formal government claim. Only a recognized government official can assert such a privilege, and the judiciary must evaluate it, and may accept or reject the government's positions. Because the DoS has not intervened, MSA must produce relevant material, unless it can show a recognized privilege or statutory bar.

## II. LOGIC AND FIVE SYLLOGISMS RENDER MSA'S POSITIONS ILLOGICAL

Defendant MSA seeks to classify itself as a "contractor" and, therefore, as an "employee" of the U.S. State Department under Touhy regulations who can't disseminate information to private or third-party litigants. Yet, it simultaneously attempts to invoke those same regulations to shield itself from the routine discovery obligations of a defendant. Touhy regulations, 22 C.F.R. Part 172, exist to protect federal agencies from burdensome third-party discovery demands in lawsuits to which neither the agency nor its recognized "employees" is a party. Once MSA is categorized as a State Department "employee," any suit involving MSA necessarily includes an agency "employee" as a direct party, eliminating the rationale for Touhy's application. MSA posits that its contract with the State Department prevents it from producing or disclosing certain information without official Touhy approval. Any confidentiality concerns

arising from the government "ownership" of all documents generated under MSA's contract are distinct from the Touhy regulations. MSA may not simply conflate its private contractual obligations with Touhy so as to escape discovery rules. If genuine security or secrecy issues exist, they can be addressed through a normal protective order, which need not require imposing Touhy restrictions on Plaintiff Lancaster. The following five syllogisms show the folly of MSA's positions.

For each of the following five syllogisms, the following statutory premise applies: 41 U.S.C. § 4712(a)(1) provides that an "employee of a contractor *** may not be *** discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is *evidence* of [misconduct] *** relating to a Federal contract or grant". (Emphasis added). § 4712(a)(2)(F) provides that the "persons and bodies described in this paragraph" include a "court". § 4712(a)(3)(A) provides protection to "an employee who initiates *or provides evidence* of contractor *** misconduct in *any judicial* *** *proceeding*". (Emphasis added). Thus, not only are § 4712 plaintiffs Garrett Lancaster, Karen Iovino and OIG complainant Carolyn Olech protected for their disclosures to the U.S. District Court for the Western District of Virginia as plaintiffs, but all current or former MSA employees who "provide evidence" that may support Plaintiff's contentions of misconduct in discovery or trial are also fully protected, whether they give that evidence by deposition testimony or by document production.

**SYLLOGISM #1: If MSA Qualifies as a "Contractor," It Must Be a Touhy "Employee." If a Touhy "Employee" It Is a Party, Thus Touhy Regulations Do Not Apply.**

1. **Major Premise**: Under the State Department's Touhy regulations, "employees" are defined to include contractors.

2. **Minor Premise**: MSA's contractual relationship with the State Department places it in the category of a "contractor."

3. **Conclusion**: MSA is a Touhy "employee" and because the Touhy regulations do not apply when the agency or its employees are parties to the litigation, MSA's participation as the sole defendant means Touhy cannot be invoked to prohibit Plaintiff Lancaster's discovery requests.

**SYLLOGISM #2: If the State Department's Touhy Regulation Define All Contractors and Former Employees as Touhy "Employees," then Lancaster Is also a Touhy "Employee" and this Lawsuit is between Two Touhy "Employees", Rendering the Touhy Regulations Inapplicable.**

1. **Major Premise**: The State Department's Touhy regulations define "employee" to include both current and former employees, as well as contractors.

2. **Minor Premise**: Plaintiff Lancaster was a contractor employee and is thus also encompassed by that broad definition, just as MSA is.

3. **Conclusion**: Because Lancaster, too, is an "employee" under that definition, the underlying lawsuit involves at least one recognized "employee" on both sides of the "v." line, which, by definition, removes the "third-party private litigant" label Touhy was designed to regulate.

**SYLLOGISM #3: The Government Has Not Asserted a Violation of Touhy by Lancaster's Filing of his Factually Detailed Whistleblower Lawsuit, Thus Touhy Does Not Apply to Section 4712 Litigation**

1. **Major Premise**: Under the State Department's Touhy regulations, a "former employee" must ostensibly seek agency approval prior to divulging any Department information or contractor information it owns. Neither MSA nor the State Department has objected in any forum that Lancaster violated Touhy procedures by publicly disclosing such information extensively in his federal court complaint.

2. **Minor Premise**: Lancaster, as a former contractor employee, filed a federal lawsuit under 41 U.S.C. § 4712 alleging wrongful retaliation and disclosing extensive facts about the MSA State Department contract without seeking or receiving any explicit Touhy pre-approval.

3. **Conclusion**: Touhy regulations do not apply in litigation under 41 U.S.C. § 4712 brought by a former employee against a government contractor.

**SYLLOGISM #4: If Olech, Iovino, and Lancaster Do Not Require Touhy Approval to Disclose MSA and State Department Program Information in § 4712 Litigation, Then No Other Current or Former MSA Employee Requires Touhy Approval to Give Evidence or Make Public Disclosures in the Same Court.**

1. **Major Premise**: Touhy regulations, if they apply, apply uniformly to all "employees," as that term is comprehensively defined (including former employees, contractors, and corporate contractors).

2. **Minor Premise**: Olech, Iovino and Lancaster—undisputedly "former MSA employees" or "contractor employees" under that definition—have filed federal complaints under 41 U.S.C. § 4712 or OIG complaints and have publicly disclosed substantial facts regarding MSA's contract performance, all without seeking prior Touhy approval. Neither MSA nor the State Department has objected to these disclosures on Touhy grounds.

3. **Conclusion**: Therefore, if Touhy was never invoked to require advanced approval for disclosures by Olech, Iovino, or Lancaster, no other past or present MSA individual can be compelled to seek Touhy approval in a parallel or derivative proceeding (like Mr. Lancaster's depositions). The agency cannot selectively apply the regulations to identical categories of persons.

**SYLLOGISM #5: If Lancaster's Section 4712 Action Has One or More State Department Touhy "Employees" as a Party, Then Any Department Control**

**Rights Over Evidence Are Not Conferred by Touhy but by Some Other Law, Rule or Regulation, if Any.**

1. **Major Premise**: Where the State Department's Touhy regulations do not apply—because the litigation is between or among the Department's recognized "employees"—any authority or control over discovery or testimony must come from some other legal source, not Touhy.

2. **Minor Premise**: Assuming Lancaster's whistleblower lawsuit is between two Touhy "employees" (Lancaster and MSA), then Touhy's function of restricting disclosures in "private litigation" is nullified.

3. **Conclusion**: Whatever rights the State Department might claim to have to manage or oversee the litigation do not emanate from the Touhy regulations.

## III. FACTS REGARDING MSA'S IMPROPER REFUSAL TO PROVIDE DISCOVERY

In reviewing MSA's objections to Plaintiff's First Discovery Requests, (ECF # 38-7) and notices of deposition (ECF # 38-4), it becomes clear that MSA's repeated references to "government property" and Department of State (DoS) Touhy regulations have led to improper refusals or limitations on discovery. Below are a few examples of the normal and routine discovery requests for information MSA refuses to provide without a protective order.

### A. <u>Plaintiff's First Set of Discovery Requests Under Rules 33 and 34 (ECF # 38-7):</u>

#### 1. Interrogatory No. 1 (Identification of Decision-Makers in Plaintiff's Termination)

Plaintiff's Interrogatory No. 1 asks MSA to identify all individuals who participated in or were consulted about the decision to terminate Plaintiff and to describe these individuals' roles and input. In its objections, MSA claims the request is subject to confidentiality restrictions of a third party (the DoS) and that the documents or information sought are "government property.". By refusing to substantively answer Interrogatory No. 1 on these grounds, MSA is preventing

Plaintiff from learning which managers or executives participated in the termination—information that is routine in any employment action.

**2. Interrogatory No. 2 (Identification of Decision-Makers for Administrative Leave)**

Interrogatory No. 2 asks MSA to identify the individuals involved in placing Plaintiff on administrative leave, describing their roles and input. Again, MSA objects by stating that the information is subject to confidentiality restrictions of the government, or that it cannot disclose the identities because of references to "government property" or "Touhy." As with Interrogatory No. 1, identifying who placed Plaintiff on administrative leave and explaining why is crucial to the retaliation analysis. The law does not grant MSA the power to withhold this essential "who-and-why" information by citing agency ownership disclaimers in its DoS contract.

**3. Interrogatory Nos. 3–5 (Comparators and Disciplinary History)**

Plaintiff's Interrogatories Nos. 3, 4, and 5 seek information on how MSA has disciplined or terminated other employees or contractors for code-of-conduct violations, specifically those who, like Plaintiff, allegedly violated certain protocols. MSA objects that these requests are overbroad, irrelevant, and subject to "confidentiality restrictions" or "government property" disclaimers. These arguments fail because comparator data is typically central to claims of pretext in retaliation or discrimination suits: MSA's invocation of "government property" or Touhy is not a recognized legal privilege justifying a refusal.

**4. Request for Production No. 1 (Plaintiff's Personnel File and Related Records)**

Request No. 1 seeks Plaintiff's complete personnel file, including HR documents, performance reviews, disciplinary notices, and any records compiled by supervisors. MSA objects that these items are "subject to confidentiality restrictions of a third party" and "government property," offering only to produce them under an extremely broad protective

order. Yet, it is standard in employment and whistleblower disputes that the plaintiff's own personnel file is discoverable.

**5. Request for Production No. 2 (Communications About Plaintiff's Administrative Leave and Termination)**

Request No. 2 seeks all communications referencing Plaintiff's placement on administrative leave and eventual termination. MSA again objects based on "government property," Touhy, and confidentiality disclaimers, stating it will only produce after entry of a large-scale protective order. However, internal communications about an employee's discipline or discharge are integral to investigating whether the stated reasons for firing were legitimate or pretextual.

**6. Request for Production Nos. 3–5 (Communications About "Failure to Follow Protocols" and OIG Filings)**

These requests ask for documents relating to MSA's internal or external communications about Plaintiff's alleged "failure to follow protocols" and any Office of Inspector General (OIG) or oversight reporting. MSA objects that they are overbroad and subject to "government property" disclaimers. Yet such records, including OIG correspondence, are commonly discoverable in whistleblower cases because they show how the employer responded to (or characterized) the employee's alleged infraction.

**7. Request for Production No. 17–19 (Other Employee Complaints and Comparator Discipline)**

MSA objects to requests for documents about other employee complaints of unfair or retaliatory treatment (Nos. 17–19) by stating they are overbroad, irrelevant, or "government property." However, documents showing how MSA responded to internal or external

whistleblower-type complaints from other employees are often critical to demonstrate a pattern of retaliation or an established corporate stance toward whistleblowers. Like comparator data, this is a recognized area of relevance.

**B. <u>Plaintiff's Deposition Requests (ECF # 37-4):</u>**

Plaintiff has requested depositions of two former co-workers, Dr. Carolyn Olech and Dr. Karen Iovino, who—like Mr. Lancaster—are also whistleblowers previously employed by MSA. All three individuals, including Mr. Lancaster, are represented by the same counsel, the Government Accountability Project (GAP). MSA opposes or seeks to restrict these depositions on the ground that Dr. Olech and Dr. Iovino, in MSA's view, are covered by obligations in the MSA–Department of State (DoS) contract, and that some form of DoS or MSA approval is necessary before these depositions can proceed. MSA refers to "government property" concerns and Touhy regulations in this context, maintaining that these ex-employees are or should be subject to the same confidentiality claims as if they were current MSA employees or official agency personnel.

Both Dr. Olech and Dr. Iovino have firsthand knowledge of how MSA handled whistleblower disclosures, and they share attorneys with Lancaster (GAP). Plaintiff's counsel notified MSA that they do not seek Touhy authorization from the government on behalf of the whistleblowers themselves, but rather anticipate that MSA may request DoS clearance if it genuinely believes Touhy applies.

On December 5, 2024, Plaintiff's counsel sent scheduling notices intending to depose MSA itself under Rule 30(b)(6). MSA has responded by citing contract provisions and Touhy references and suggesting that a broad protective order or government authorization is required before these depositions occur.

The Rule 30(b)(6) deposition notice seeks MSA's official reasons for terminating Lancaster and for taking any other alleged adverse actions. This inquiry is basic to understanding any potential link between protected whistleblower activity and the termination decision. The topics outlined in the notice are quite limited.

## IV. THIS COURT SHOULD FOLLOW THE MENOCAL CASE, NOT IOVINO

### A. ***Menocal v. GEO Grp., Inc*:**

*Menocal v. GEO Grp., Inc.,* Civil Action No. 14-cv-02887-JLK, 2017 U.S. Dist. LEXIS 203420, at *2-3, (also 2017 WL 4334000) (D. Colo. June 6, 2017). provides a rule of decision and legal reasoning that few courts would not follow. The *Iovino* court is one of those. Unlike *Menocal* which provides a rationale, *Iovino* provides little more than a holding. *Menocal* was lengthy litigation with at least four published decisions and denial of the contractor's petition for certiorari on other grounds. The action was brought by a certified Plaintiff Class consisting of current and former detainees of the Aurora Detention Facility, a private immigration detention center operated by Defendant The GEO Group, Inc. (GEO) pursuant to a contract with U.S. Department of Homeland Security (Department) Immigration and Customs Enforcement. The detainees alleged that, in operating the Facility, GEO violated their rights under the Trafficking Victims Protection Act. Plaintiffs served discovery requests on GEO who objected on the basis that they were restricted by *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S. Ct. 416, 95 L. Ed. 417 (1951), and the Department's related regulations. Exactly like MSA here, GEO asserted that it had not been given permission from the Department to provide the information, and so, under *Touhy* and the Department's regulations, it could not provide discovery on its own accord. The district judge denied the contractor a protective order finding "GEO's arguments to be without merit and offensive to the judicial process." *Menocal v. GEO Grp., Inc.,* Civil Action No. 14-cv-02887-JLK, 2017 U.S. Dist. LEXIS 203420, at *2-3 (D. Colo. June 6, 2017). GEO

argued that the Department of Homeland Security has adopted regulations providing that, in response to a demand or request, "including in connection with any litigation," no Department employee shall "provide oral or written testimony by deposition. . . unless authorized to do so by the Office of the General Counsel." 6 C.F.R. § 5.44(a). *** Contractors are specifically included in the definition of "employee" for the purposes of these regulations. *Id.* § 5.41(c). *Menocal*, at *6.

Like MSA's plea here, GEO argued that if the court denied the protective order, "it will be placed in a 'no win' scenario: violating the Department's regulations or violating a court order." The court found that plaintiffs were unquestionably correct" in "asserting that, as a party to the litigation, GEO is beyond the reach of the *Touhy* regulations and *** finding otherwise would allow the Department to usurp the court's authority to control discovery, resulting in a separation of powers problem." *Menocal v. GEO Grp., Inc.,id at* *6-7. The court held:

> Here, unlike in *Touhy* where the Department of Justice employee was not a party to the case, GEO, an "employee" of the Department of Homeland Security, is a party to the litigation. *** The conspicuous and sensible purpose of the *Touhy* regulations is to protect an agency of government from unrestricted disclosure of official documents when that agency or its "employees" are *not* parties to the litigation. The purpose is not to create obstacles or shields from the normal rules of discovery when that agency or its "employees" are parties. In the latter case, the law requires them to be treated equally without special and predictably stilted advantage.

*Menocal v. GEO Grp., Inc.,id at* *8. As the court explained:

> GEO further argues that it should benefit from a single side of the coin—that it is an "employee" under the Department's *Touhy* regulations—but not be subject to the other side—that its "employee"-party status exempts discovery in this case from the regulations. ***The fact that GEO lacks the "unquestioned authority to authorize disclosure," is no different from any other agency employee who could be a party to litigation. GEO is an "employee" of the Department and a party to the litigation, so the Department's *Touhy* regulations are inapplicable for discovery proceedings in this case.

*Menocal, at *11.* The court found that adopting GEO's position would threaten the role of the judiciary in controlling discovery, and this would make issuance of a protective order inappropriate:

> Permitting GEO to hide behind the Department's regulations here would mischaracterize the Touhy doctrine and distort the intent of the Housekeeping Statute. Specifically, allowing a government agency to determine what evidence is discoverable could create a significant separation of powers problem. See *Gulf Grp. Gen. Enters. Co. W.L.L. v. United States, 98 Fed. Cl. 639, 647 (Fed. Cl. 2011). The judiciary oversees the admission o*f evidence at trial. *Id.* "[N]o executive official or agency can be given absolute authority to determine what documents in his possession" should be considered by the court. *Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 794, 149 U.S. App. D.C. 385 (D.C. Cir. 1971). Thus, I cannot authorize the Department to determine what evidence is discoverable in this case, because doing so would undermine the role of the court.
>
> Good cause is required for the issuance of a protective order under Federal Rule of Civil Procedure 26(c). GEO has failed to demonstrate that it exists in this case. And it has not established that its objections are valid or that it is entitled to any privilege under Touhy or the related Department of Homeland Security regulations.

*Menocal, at* *11-12.

**B. *<u>Iovino v. MSA</u>*:**

Two distinguishing features of *Lancaster v. MSA* from *Iovino v. MSA* bear emphasis. First, DoS through the DOJ entered an appearance, statement of interest and legal memorandum in *Iovino*. It has not done so in this case, nor has it entered an appearance in the pending *Iovino* Fourth Circuit appeal. Second, no district judge in this Court has considered *Menocal* in the first instance, only under a Rule 72 deferential standard of the Magistrate's decision. Judge Cullen ruled:

> Iovino next objects to the protective order because, according to her, Judge Hoppe gave “short shrift” to a Colorado district court case on which she relied, Menocal, 2017 WL 4334000, and did not apply that opinion's “sound logic.” (See Pl.’s Objs. at 10–13.) Judge Hoppe correctly pointed out—as Iovino concedes—that *Menocal* is not binding on this court, and he found the decision unpersuasive. (Mem. Op. & Order, May 23, 2024, at 10, 12.) Iovino takes issue with Judge Hoppe's lack of a detailed explanation for why he found the opinion unpersuasive, but she does not explain how his finding is contrary to law. The court is also not aware of a single

> case that has relied on *Menocal* to support sidestepping a federal agency's Touhy regulations. Simply because Judge Hoppe has a different view than Iovino of an outlier opinion that is not binding on this court does not mean his decision is contrary to law. See Stone, 356 F. Supp. 3d at 511. Iovino's objection based on Menocal will be overruled.

*Iovino v. Michael Stapleton Assocs., Ltd.,* No. 5:21-CV-00064, 2024 WL 3520170, at *5 (W.D. Va. July 24, 2024). As to the Magistrate's decision, this is the sum and substance of the discussion of *Menocal*:

> Instead, Iovino argues that the State Department's decision to "include the term 'contractor' as a category of 'employee' in their Touhy regulations promulgated under 5 U.S.C. § 301" means that "the agency 'contractor' has an identical status to [the] agency 'employee' " *for all purposes*, "unless the regulations limit the contractor's inclusion in that definition." Pl.'s Br. in Opp'n 2. "Consequently, *if the contractor is sued*, it is the same as suing an agency employee, *which is the same as suing the agency* for purposes of § 301. As such, under the Supreme Court's *Touhy* doctrine, the doctrine has no application to limiting documents or testimony of government contractors named or joined as defendants in civil litigation." *Id.* (emphasis added). Her argument concludes, "[b]y suing MSA under § 4712, Dr. Iovino sued an 'employee' of the State Department, *which under § 301 means the DoS is a party to the litigation* and *Touhy*[ ] therefore does not apply." *Id.* (emphasis added). Iovino does not cite any binding authority to support this conclusion. *See generally id.* at 2–7 (discussing *Menocal v. GEO Group, Inc.*, No. 14:cv2887, 2017 WL 4334000, at *2–4 (D. Colo. June 6, 2017).
> ***
> Iovino's reliance on *Menocal*, 2017 WL 4334000, at *2–4, to support her contrary position is not persuasive.

*Iovino v. Michael Stapleton Assocs*., No. 5:21-CV-00064, 2024 WL 2412694, at 2-4, *6 (W.D. Va. May 23, 2024), *aff'd sub nom. Iovino v. Michael Stapleton Assocs., Ltd.*, No. 5:21-CV-00064, 2024 WL 3520170 (W.D. Va. July 24, 2024) (original emphasis).

It is for this Court to take a *de novo* fresh look at *Menocal*, as there is no precedent nor judicial custom that an Article III judge give determinative weight to a Magistrate's decision.

## V. RULE 26(C): GOOD CAUSE, AVERSION TO BLANKET ORDERS, AND THE FAILURE OF CONTRACT CLAUSES TO CREATE PRIVILEGES

MSA pleads to the Court, unabashedly without evidence, that if it provides evidence in discovery without the blessing of DoS that it will suffer reprisal by cancellation, modification or

non-renewal of its contract. Yet, did MSA provide any evidence of such threatened reprisal? No, it's just a supposed fear that keeps the company awake at night. In the parlance of Rule 26(c), that fear is an "annoyance", and MSA expects the courts in a § 4712 contractor misconduct case-- in three of them-- to relieve it of this free-floating anxiety. Rule 26 does not provide that palliative, but instead provides that a court "may, for good cause," issue an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." The party seeking such a protective order bears the burden of establishing good cause through specific, concrete evidence that particularized harm would result from open discovery. In the § 4712 whistleblower context, the bar for imposing secrecy should be especially high, as federal policy demands the evidence be collected, and employees come forth without fear.

### A. The "Good Cause" Requirement in Rule 26(c) Jurisprudence

Rule 26(c) codifies the principle that while discovery is ordinarily quite broad, there may be scenarios where certain information legitimately warrants protection from public disclosure or even from adversarial access. Courts must balance the *substantial and demonstrated need* for confidentiality against the requesting party's interest in obtaining relevant materials, and in an Article III court governing the process, not an Article II executive agency.

In *In re Wilson*, 149 F.3d 249, 253 (4th Cir. 1998), the Fourth Circuit emphasized that courts cannot simply accept a party's generalized concern for secrecy; it must appear from evidence or affidavit that a real and particularized harm is likely to follow unless the protective order issues. The court reiterated that the moving party must demonstrate a specific harm:

> [T]he requisite balancing test contemplates that some harm will be suffered as a result of disclosure. Thus, even if harm is inevitable or great, the inquiry is not at an end; the court must still determine whether the need for the information outweighs the harm that will be suffered from disclosure.

*Id*. Rule 26(c) is crafted to ensure that protective orders are not granted as a matter of course over generalized fears of what might happen, and unproven assertions of "inevitable disclosure" aren't enough. *Id*.

Against that backdrop, MSA's references to "government property" or "Department of State interests" do not inherently satisfy the good cause mandate. The claim that the DoS might disapprove of routine discovery, absent a formal statement from the agency itself, is too abstract to establish the kind of definable harm that Rule 26(c) contemplates. Without an affidavit or an explicit directive or other evidence, MSA's speculations remain insufficient.

**B. <u>The Judicial Aversion to Blanket or Umbrella Protective Orders</u>**

Even where some measure of confidentiality is justified, courts disfavor blanket or "umbrella" orders that extend broadly to nearly all materials produced in discovery. Here, we aren't discussing "nearly" all materials, but in fact *all* materials, since MSA says the government owns *all of it*. Blanket orders effectively invert the principle that the proponent of secrecy must prove its necessity. Instead, they let the contractor or defendant self-designate entire swaths of evidence as off-limits unless challenged individually, confounding the Rule 26 burden of proof.

*United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 566-67 (E.D. Va. 2010), is a prominent example in which the district court set aside a protective order for this reason. The contractor there proposed a broad confidentiality regime that allowed it to declare documents secret without the court's item-by-item determination of good cause. The court found that approach inconsistent with Rule 26(c), which demands a judicial assessment of each category or item the movant claims is sensitive:

> Yet, this does not mean that a district court must determine good cause on a document-by-document, or transcript-page-by-transcript-page, basis. Instead, a magistrate judge or district judge may issue an order protecting specifically delineated categories of documents upon a showing that good cause exists to protect each category.[5] Such an order—commonly referred to as an "umbrella" order—is

> faithful to Rule 26(c)'s good cause requirement because a judge has made a determination in the first instance that there is good cause to protect documents falling into a particular category. Under this type of "umbrella" order, the parties are authorized to designate whether discovery materials fall within *any of the enumerated good cause categories* set forth in the protective order. ***
>
> Here, the protective order violates Rule 26(c) by delegating the good cause determination to the parties, thereby erasing the rule's requirement that there be a *judicial* determination of good cause. The use of good cause categories in a protective order prevents this inappropriate delegation and instead limits the parties to determining whether a particular document or other discovery materials fits within a good cause category.

*Id.* (Emphasis added). All government owned documents is not an "enumerated category".

**C. <u>Failure of Contractual Clauses to Create Privileges or Override Federal Rules</u>**

A critical aspect of MSA's position is its invocation of contractual confidentiality clauses with the DoS, which presumably state that documents generated in the performance of the contract are deemed "government property," and that the contractor has obligations to maintain secrecy or withhold them absent agency authorization. While such clauses may govern the contractor's day-to-day handling of certain records, they do not nullify or supersede the Federal Rules of Civil Procedure or the constitutional prerogatives of the judiciary. Courts have repeatedly reaffirmed that private agreements or contracts with agencies cannot override a litigant's discovery obligations. Nor can they confer a new or broader privilege not recognized by law.

In *Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110-11 (D. Colo. 1992), the court made plain that the mere fact that documents may be government-controlled documents or property does not shield them from discovery:

> More importantly, however, these decisions appear to be at odds with the generally accepted interpretation of Rule 34, which focuses on a party's ability to obtain documents on demand. This ability is not affected by the source's retention of ownership or its unilaterally imposed restrictions on disclosure. ***

> An analogous situation was presented to the United States Supreme Court in *Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). In that case, the Societe brought suit against the government under the Trading with the Enemy Act. The government sought documents from Societe pursuant to Fed.R.Civ.P. 34. Although the documents were in the physical possession of a Swiss banking firm, there was no doubt that the Societe could obtain the subject materials from the Swiss bank on demand. Nevertheless, the Societe refused to comply with the request for production because Swiss law prohibited disclosure of bank records. The Supreme Court rejected the Societe's contention that the interdictions of Swiss law precluded a finding that it had "control" over the documents within the meaning of Rule 34.

*Id*. *See also In re Westinghouse Electric Corp Uranium Contracts Litigation,* 563 F.2d 992, 996–97 (10th Cir.1977) (applying the principles enunciated in *Societe* ).

Similarly, the Tenth Circuit in S*perandeo v. Milk Drivers & Dairy Employees Local Union No.* 537, 334 F.2d 381, 384-85 (10th Cir. 1964), indicated that the normal operation of the Federal Rules is not displaced simply because a federal agency says so:

> It is for the Court, and not the governmental agency or executive branch, to determine whether documents sought to be withheld under a claim of privilege are entitled to the protection of that privilege. In this case, the court properly sought to make such a determination, by ordering the documents to be submitted for an in camera examination. Appellant, in effect, refused to comply with that order and thereby sought to do that which he can not do, namely, determine whether the documents were privileged.
>
> ***
>
> It may well be that part or all of the documents are privileged or for some other legal reason are not subject to disclosure or would not be admissible into evidence in the case. But that determination must be made by the trial court and not by a litigant in the case.

*Id.* A contract provision that says every little scrap of paper under the MSA contract is confidential government property would make a mockery of Rule 26 and Article III.

Nor can MSA be delegated executive authority or executive privilege. *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953), recognized that the executive's ability to withhold evidence depends on asserting a recognized right or privilege clearly articulated in the law, such as state

secrets. The assertion of such right must be accompanied by the appropriate government official's affidavit. Even then, an "agency interest" may remain legally unavailing:

> Nevertheless, the principles which control the application of the privilege emerge quite clearly from the available precedents. The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect.

*Id.* Article III bodies, not those of Article II, govern the flow of evidence in federal courts.

Finally, MSA's plea that Lancaster or Dr. Iovino or their counsel the Government Accountability Project, Inc. may publish some of the discovery materials on their website cannot play any part in the protective order decision. As explained in *U.S. ex rel. Davis v. Prince*, id at 567:

> Nor is the protective order rescued by defendants' argument that there is good cause to prohibit public dissemination of all discovery materials because plaintiffs' counsel has stated her intent to publish all non-confidential discovery materials on her website. Many circuits have sensibly held that where discovery materials are not protected by a valid protective order, parties may use that information in whatever manner they see fit. *See Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854, 858 (7th Cir.1994) ("Absent a valid protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit."). *It cannot logically be the case that good cause exists to prohibit the public disclosure of discovery materials because a party states an intent to disseminate those materials in accordance with the law*.

(Emphasis added). Section 4712 cases are about holding errant government contractors, and the agencies that tolerate their misconduct accountable. That purpose is defeated by secrecy based on nothing more than a service acquisition contract keeping everything indiscriminately confidential.

## VI. MSA LACKS STANDING AND CONSTITUTIONAL AUTHORITY TO ASSERT TOUHY REGULATIONS THAT ONLY THE GOVERNMENT CAN ENFORCE

### A. MSA Lacks Standing to Assert Touhy Compliance in its Motion to Dismiss

MSA, as a private litigant, lacks standing to seek enforcement of DoS Touhy regulations because they confer no rights upon MSA. To establish standing, a party must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical". *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The irreducible constitutional minimum of standing contains three elements. First, an injury in fact of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, a causal connection between the injury and the conduct complained of and not the result of an independent action of a party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id* at 504 U.S. 560-61. MSA cannot meet these criteria with this speculative argument that if the Court does not grant a protective order, *MSA risks breaching its contract* with DoS and subjecting itself to the repercussions that come with breaching a U.S. Government contract. Such implausible risks fall far short of the required injury in fact. This also highlights the fundamental flaw of MSA's entire Touhy argument-- it is MSA, not Lancaster, who is required to ask DoS lawyers to approve the requested depositions, if anyone need be asked other than an Article III judge.

When a party claiming standing is not the direct subject of government action, but rather claims a right based on application of government's regulation to someone else, establishing standing is "substantially more difficult". *Id* at 504 U.S. 562. MSA lacks standing to enforce Touhy regulations against Lancaster because MSA is not the subject of these regulations. See, *California v. Texas*, 593 U.S. 659, 670 (2021) (party must demonstrate a "realistic danger of

sustaining a direct injury as a result of the statute's operation or enforcement" to establish standing for a pre-enforcement challenge, citing *Spokeo, Inc. v. Robins*, 578 U. S. 330, 338 (2016). In *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012), this Court emphasized that when an asserted injury arises from the government's regulation of someone else, traceability of an injury back to the party asserting standing is particularly difficult, citing *Lujan*, 504 U.S. at 562. More recently in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 440 (2021), the Court emphasized that Article III standing requires a concrete injury and a party cannot allege a "bare procedural violation, divorced from any concrete harm", and satisfy the injury-in-fact requirement of Article III. The mere fact that Touhy regulations exist and MSA will be disadvantaged if they are not enforced against its adversary does not confer standing.

**B. It is Unconstitutional to Allow MSA to Act in the Place of the State Department**

Allowing MSA to assert and enforce DoS Touhy regulations violates the Appointments Clause, which is an adjunct argument to Lancaster's separation of powers objections. As the Supreme Court held in *Buckley v. Valeo*, 424 U.S. 1,140 (1976), conducting civil litigation on behalf of the United States to vindicate public rights constitutes "significant authority" reserved for properly appointed officers. MSA's assertion of these regulations is not an isolated event, but part of a practice being adopted by the State Department as a delegated power of its private contractors within the meaning of the "continuing position" criterion established in *Lucia v. SEC*, 585 U.S. 237, 245 (2018). This represents an ongoing role for MSA rather than a temporary assignment. This Court need look no further for than DoS' Touhy regulation, 22 CFR § 172.1(b), which provides that "the term employee includes *** *all employees and former employees* of the Department of State *** subject to the supervision, jurisdiction, or control of the Secretary of State *** including United States nationals, foreign nationals, *and contractors*." (Emphasis added). If MSA has this authority, then the DoS has deputized all of its

corporate contractors to enforce its *Touhy* regulations. There private corporations are, indeed, the government by that logic.

Even assuming arguendo that the DoS can define "employee" to include a corporate "contractor", that role does not entail any enforcement actions whatsoever. First, as soon as MSA as an "employee" received the discovery requests from Lancaster, 22 CFR § 172.3(a) instructed that employee to take the matter to the DoS Office of Legal Advisor, or if already represented by the DOJ, then to the DOJ lawyer. Nothing in the regulations authorize the DoS to tell the "employee" to go and hire a private lawyer and litigate. Second, under 22 CFR § 172.6(a), when demands for documents or testimony are made in a court, employees don't go get their own private lawyers and litigate, the matter is exclusively given to government lawyers, i.e. "*either a Department of Justice attorney or a Department attorney designated for the purpose", who will then* "appear with the employee upon whom the demand has been made ***"

By MSA as a private contractor-- with private lawyers-- being allowed by a district court to enforce these regulations, MSA has been unconstitutionally vested with "quintessentially executive power" without proper appointment, plainly violating the constitutional structure outlined in *Seila Law LLC v. CFPB*, 591 U.S. 197, 219 (2020). As the Court there quoted: "As Madison stated on the floor of the First Congress, 'if any power whatsoever is in its nature Executive, it is the power of appointing, overseeing, and controlling those who execute the laws.'" Id at 591 U.S. 213.

## VII. CONCLUSION AND PRAYER FOR RELIEF

MSA’s approach clashes with each foundational component of American civil procedure as well as Article III. First, it contravenes Rule 26(c) by failing the “good cause” standard, as it has not identified a discrete, concrete harm that would arise from producing the requested materials. Second, it disregards the legislative impetus of Section 4712 for open discovery in

contractor misconduct case, as recognized by the statutory language itself. Third, it stumbles on the constitutional requirement that recognized rights and privileges be asserted by the government itself, rather than by a contractor speculatively claiming good cause for agency confidentiality, in the most conclusory terms.

Accordingly, Plaintiff prays that this Court:

1. Deny MSA's motion for a sweeping protective order that lumps all contract-related materials under the label of confidential government property and off-limits under *Touhy* restrictions unless the executive agency approves.

2. Direct MSA to comply with standard discovery obligations by producing all responsive and non-privileged documents in its possession or control.

3. Allow MSA to propose a narrowly tailored protective order limited to (a) demonstrably sensitive subsets of records, and (b) upon a factual showing of harm if the documents or testimony is made public.

Respectfully Submitted this 27th day of Decemner 2024,

/s/Stephani L. Ayers

_______________________________

Stephani L. Ayers
GOVERNMENT ACCOUNTABILITY PROJECT

Nate L. Adams III, P.C. (VSB No. 20707)
ADAMS AND ASSOCIATES

Attorneys for Mr. Lancaster