**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **GARRETT LANCASTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 5:23-CV-00063-EKD** |
| | ) | |
| **v.** | ) | **MSA's REPLY IN SUPPORT** |
| | ) | **OF ITS MOTION FOR A** |
| **MICHAEL STAPLETON ASSOCIATES, LTD.,** | ) | **CONFIDENTIALITY ORDER** |
| **d/b/a MSA SECURITY, INC.** | ) | **UNDER FEDERAL RULE OF** |
| | ) | **CIVIL PROCEDURE 26(c)** |
| **Defendant.** | ) | |

Respectfully submitted,

January 3, 2025

*/s/ Daniel S. Ward*

Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Padgett (VSB 96177)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
ryan@wardberry.com
dan@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................1

II. DEBUNKING LANCASTER'S ILLOGICAL "SYLLOGISMS" (Responsive to ECF 39, Section II) ........................................................................2

a. In Syllogism Nos. 1, 2 And 5, Lancaster Improperly Argues That *Touhy* does Not Apply In This Litigation Because MSA and Lancaster Are DoS Employees ........................................................................2

b. In Syllogism Nos. 3-4, Lancaster Improperly Argues That *Touhy* Does Not Apply In This Litigation Because DoS Has Not Asserted That Olech, Iovino, Or Lancaster Have Violated *Touhy* By Their Public Filing Of DoS And/Or MSA Information ..................................................3

III. MSA IS CONTRACTUALLY OBLIGATED TO KEEP ALL PROGRAM-RELATED MATERIALS CONFIDENTIAL (Responsive to ECF 39, Section III and Section V(C)) ......................................................5

a. MSA Is Within Its Rights To Object To Discovery Requests And Has Informed Lancaster That It Will Provide Relevant Discovery Responses Once A Confidentiality Order Is Issued................................................6

b. The Terms Of The DoS/MSA Contract And DoS's *Touhy* Regulations Are Entirely Relevant And Applicable To This Litigation..................7

c. No Deposition Notices Have Been Issued By Either Party ....................................9

IV. AS THIS COURT HAS ALREADY DETERMINED, MENOCAL V. GEO GRP., INC. IS NOT APPLICABLE (Responsive to ECF 39, Section IV)........................................................................9

V. THERE IS GOOD CAUSE TO ENTER A CONFIDENTIALITY ORDER (Responsive to ECF 39, Section V) .......................................................................12

VI. MSA HAS STANDING TO ENSURE *TOUHY* COMPLIANCE (Responsive to ECF 39, Section VI).......................................................................15

V. CONCLUSION .........................................................................................16

# TABLE OF AUTHORITIES

**Cases** **Page**

*Boron Oil Co. v. Downie*,
873 F.2d 67 (4th Cir. 1989) ....................8, 9

*COMSAT Corp. v. Nat'l Sci. Found.*,
190 F.3d 269 (4th Cir. 1999) ....................8, 9, 15

*Dugan v. Rank*,
372 U.S. 609 (1963)....................9

*FDIC v. Meyer*,
510 U.S. 471 (1997)....................8

*Kasi v. Angelone*,
300 F.3d 487 (4th Cir. 2002) ....................8

*In re Westinghouse Electric Corp. Uranium Contracts Litigation*,
563 F.2d 992 (10th Cir. 1977) ....................7

*In re Wilson*,
149 F.3d 249 (4th Cir. 1998) ....................13

*Menocal v. GEO Grp., Inc.*,
No. 14–cv–02887–JLK, 2017 WL 4334000 (D. Colo. June 6, 2017)..............9, 10, 11, 12

*Iovino v. Michael Stapleton Associates, Ltd.*,
No. 5:21-cv-00064, 2022 WL 17581491 (W.D. Va. December 12, 2022) ....................14

*Iovino v. Michael Stapleton Associates, Ltd.*,
Case No. 5:21-cv-00064, 2024 WL 2412694 (W.D. Va. May 23, 2024)....................9, 15

*Iovino v. Michael Stapleton Associates, Ltd.*,
Case No. 5:21-cv-00064, 2024 WL 3520170 (W.D. Va. July 24, 2024) ....................10, 12

*Resolution Trust Corp. v. Deloitte & Touche*,
145 F.R.D. 108 (D. Colo. 1992) ....................7

*Smith v. Cromer*,
159 F.3d 875 (4th Cir. 1998) ....................8

*Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537*,
334 F.2d 381 (10th Cir. 1964) ....................7

*United States v. Soriano-Jarquin*,
492 F.3d 495 (4th Cir. 2007) .......... 8, 9

*United States v. Timms*,
844 F. App'x 658 (4th Cir. 2021) .......... 8, 9

*United States ex rel. Touhy v. Ragen*,
340 U.S. 462 (1951) .......... 6, 8

*United States v. Williams*,
170 F.3d 431 (4th Cir. 1999) .......... 8, 9

*U.S. ex rel. Davis v. Prince*,
753 F. Supp. 2d 561 (E.D. Va. 2010) .......... 13, 14

*U.S. ex rel. Roby v. Boeing Co.*,
189 F.R.D. 512 (S.D. Ohio 1999) .......... 7

**Statutes and Rules** **Page**

22 C.F.R. § 172.1 .......... 2, 3, 4, 6, 9

22 C.F.R. § 172.2 .......... 2, 6

22 C.F.R. § 172.3 .......... 2, 6

22 C.F.R. § 172.4 .......... 2, 5, 6

22 C.F.R. § 172.5 .......... 2, 6

22 C.F.R. § 172.6 .......... 2, 6

22 C.F.R. § 172.7 .......... 2, 6

22 C.F.R. § 172.8 .......... 2, 6

22 C.F.R. § 172.9 .......... 2, 6

6 C.F.R. § 5.41 .......... 10

6 C.F.R. § 5.44 .......... 10

5 U.S.C. § 301 .......... 2, 8

41 U.S.C. § 4712 .......... 15

Fed. R. Civ. P. 26(c) ....................................................................................................1, 14, 16

Fed. R. Civ. P. 30(b)(6) ..........................................................................................................9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **GARRETT LANCASTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 5:23-CV-00063-EKD** |
| **v.** | ) | |
| | ) | |
| | ) | |
| | ) | **MSA'S REPLY IN SUPPORT OF ITS MOTION FOR A CONFIDENTIALITY ORDER UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(c)** |
| **MICHAEL STAPLETON ASSOCIATES, LTD., d/b/a MSA SECURITY, INC.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc. ("MSA"), by counsel, respectfully submits this reply in support of its Motion for a Confidentiality Order Under Fed. R. Civ. P. 26(c).

## I. INTRODUCTION

As a contractor to the U.S. Department of State ("DoS"), MSA is bound by the confidentiality restrictions outlined in the DoS/MSA Contract.[1] Due to those confidentiality restrictions and the fact that DoS is not a party to this litigation, the appropriate avenue for Plaintiff to obtain official DoS information is through a DoS *Touhy* request. If Plaintiff disagrees with DoS's final decision as to what information and/or documents it decides to provide Plaintiff, Plaintiff may file an appropriate action against DoS under the Administrative Procedures Act.

Because Lancaster has requested official DoS information from MSA, a private government contractor, MSA is requesting this Court enter a confidentiality order so that MSA

---

1 MSA refers to the "DoS/MSA Contract" as defined in its Motion for a Confidentiality Order.

may produce relevant documents to Lancaster while safeguarding DoS's sensitive and confidential information while it is used in this litigation.

## II. DEBUNKING LANCASTER'S ILLOGICAL "SYLLOGISMS" (Responsive to ECF 39, Section II)

Lancaster argues that five "syllogisms" explain why MSA is not entitled to a confidentiality order. All five of these syllogisms are incorrect and are themselves illogical, as explained below.

### a. In Syllogism Nos. 1, 2, And 5, Lancaster Improperly Argues That *Touhy* Does Not Apply In This Litigation Because MSA And Lancaster Are DoS Employees.

Lancaster incorrectly argues that DoS's *Touhy* regulations do not apply in this litigation because both MSA and Lancaster are DoS employees, which must mean that DoS itself is a party in this litigation.

First, and most importantly, DoS is not a party to this litigation. When DoS is *not* a party in litigation concerning DoS's official information, DoS's *Touhy* regulations are applicable. 22 C.F.R. § 172.3(a) ("Except in cases in which the Department is represented by legal counsel who have entered an appearance or otherwise given notice of their representation, only L/EX is authorized to receive and accept subpoenas, or other demands or requests directed to the Department, or any component thereof, or its employees, or former employees, whether civil or criminal nature."). According to the docket and all filings, DoS (by way of the U.S. Department of Justice ("DOJ")) has not entered its appearance in this case.

Second, under 5 U.S.C. § 301, "[t]he head of an Executive department" is granted the authority to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." Under 5 U.S.C. § 301, DoS implemented its own *Touhy* regulations to control the distribution of its information. *See* 22 C.F.R. §§ 172.1 – 172.9.

Section 172.1(b) of DoS's *Touhy* regulations specifically states that *contractors* to the DoS are considered "employees" for purposes of 22 C.F.R. Part 172:

> (b) For purposes of this part, and except as the Department may otherwise determine in a particular case, **the term employee includes** the Secretary and former Secretaries of State, and all employees and former employees of the Department of State or other federal agencies who are or were appointed by, or subject to the supervision, jurisdiction, or control of the Secretary of State or his Chiefs of Mission, whether residing or working in the United States or abroad, **including** United States nationals, foreign nationals, and **contractors**.

22 C.F.R. § 172.1(b) (emphasis added).

MSA is undoubtedly a contractor to DoS and therefore an "employee." However, Lancaster was a W2 employee of MSA, a private company. It is inaccurate, and quite a stretch, to state that Lancaster was a contractor "employee" at DoS.

**b. In Syllogism Nos. 3–4, Lancaster Improperly Argues That *Touhy* Does Not Apply In This Litigation Because DoS Has Not Asserted That Olech, Iovino, Or Lancaster Have Violated *Touhy* By Their Public Filing Of DoS And/Or MSA Information.**

Lancaster improperly argues that DoS's *Touhy* regulations do not apply in this litigation because DoS has not asserted that Carolyn Olech[2], Karen Iovino[3], or Lancaster have "violated *Touhy*" by filing public lawsuits without DoS's permission. This argument is not only incorrect but entirely irrelevant as to why MSA needs a confidentiality order in this litigation.

Pursuant to the DoS/MSA Contract, and DoS's *Touhy* regulations, MSA is required to preserve all confidential DoS information in its possession, even when requested for its use in litigation. *See* ECF 38-2; 22 C.F.R. § 172.1. Section 172.1(c) states:

---

[2] MSA reiterates that Carolyn Olech does not currently have any litigation pending against MSA.

[3] MSA again refers to Karen Iovino as "Iovino" from the *Iovino* Matter as defined in MSA's Motion for a Confidentiality Order. ECF 38-1.

> (c) For purposes of this part, the **term litigation encompasses all pre-trial, trial, and post-trial stages of all judicial or administrative actions, hearings, investigations, or similar proceedings before courts, commissions, boards (including the Board of Appellate Review), or other judicial or quasi-judicial bodies or tribunals, whether criminal, civil, or administrative in nature**. This part governs, inter alia, **responses to discovery requests**, **depositions**, and other pre-trial, trial, or post-trial proceedings, as well as responses to informal requests by attorneys or others in situations involving litigation. However, this part shall not apply to any claims by Department of State employees (present or former), or applicants for Department employment, for which jurisdiction resides with the U.S. Equal Employment Opportunity Commission; the U.S. Merit Systems Protection Board; the Office of Special Counsel; the Federal Labor Relations Authority; the Foreign Service Labor Relations Board; the Foreign Service Grievance Board; or a labor arbitrator operating under a collective bargaining agreement between the Department and a labor organization representing Department employees; or their successor agencies or entities.

22 C.F.R. § 172.1(c) (emphasis added).

MSA cannot control or prevent Olech, Iovino, or Lancaster from disclosing DoS's confidential information (especially true, as Iovino has admittedly leaked DoS's confidential information to the press (*see Iovino* Matter, ECF 93 at 2–3) and counsel for Lancaster has already stated that they are entitled to share documents and information it learns in this case with other clients and/or potential clients (ECF 38-1 at 19–20,[4] Section IV.E.3)). MSA can only refrain from improperly disclosing DoS's confidential information itself and can try to prevent the improper dissemination of DoS's confidential information by its former employees. MSA is requesting a confidentiality order in this case because 1) it is contractually bound to do so; and 2) Lancaster is in company of individuals prone to leaking confidential information.

What Lancaster chooses to do with confidential information is subject to his own discretion and subject to the appropriate consequences. What DoS and/or DOJ chooses to do when an individual improperly leaks sensitive and confidential information is up to DoS and/or DOJ, not

[4] Counsel is referring to the page numbers assigned by the ECF filing system (at the top of the brief), not the page numbers at the bottom of the brief.

MSA. However, it is statutorily clear that MSA, as a contractor employee to DoS, is **not** permitted to respond to Lancaster's discovery requests without DoS's permission to disclose certain program-related materials. Section 172.4 states:

> (a) **No employee of the Department shall**, in response to a demand or request in connection with any litigation, whether criminal or civil, provide oral or written testimony by deposition, declaration, affidavit, or otherwise concerning any information acquired while such person is or was an employee of the Department as part of the performance of that person's official duties or by virtue of that persons's official status, unless authorized to do so by the Director General of the Foreign Service and Director of Personnel (M/DGP) or the Legal Adviser (L), or delegates of either, following consultation between the two bureaus, or as authorized in § 172.4(b).
>
> . . .
>
> (c) **No employee shall**, in response to a demand or request in connection with any litigation, produce for use at such proceedings any document or any material acquired as part of the performance of that employee's duties or by virtue of that employee's official status, unless authorized to do so by the Director General of the Foreign Service and Director of Personnel, the Legal Adviser, or the Assistant Secretary of State for Consular Affairs, or the delegates thereof, as appropriate, following consultations between the concerned bureaus.

22 C.F.R. § 172.4.

As stated above, Lancaster is not a DoS employee. Lancaster's argument here is irrelevant and without logic. For these reasons, MSA requests the Court grant its motion for a confidentiality order.

## III. MSA IS CONTRACTUALLY OBLIGATED TO KEEP ALL PROGRAM-RELATED MATERIALS CONFIDENTIAL (Responsive to ECF 39, Section III and Section V(C))

Lancaster inaccurately argues that "MSA's repeated references to 'government property' and [DoS] Touhy regulations have led to improper refusals or limitations on discovery." ECF 39 at 8. Lancaster further improperly argues that MSA's contract with DoS is irrelevant and does not "override a litigant's discovery obligations." ECF 39 at 18.

**a. MSA Is Within Its Rights To Object To Discovery Requests And Has Informed Lancaster That It Will Provide Relevant Discovery Responses Once A Confidentiality Order Is Issued.**

Here, Lancaster refuses to acknowledge that MSA is operating under a federal government contract with the DoS which *requires* MSA's strict confidentiality about a sensitive government program. To reiterate, the DoS/MSA Contract contains stringent confidentiality requirements, including:

> The Contractor and its employees shall exercise the utmost discretion in regard to all matters relating to their duties and functions. They shall not communicate to any person any information known to them by reason of their performance of services under this contract which has not been made public, except in the necessary performance of their duties or upon written authorization of the Contracting Officer. **All documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government**.

MSA is not "preventing" Lancaster from learning anything in discovery and will happily produce documents to Lancaster once a confidentiality order is in place. ECF 39 at 8. Whether Lancaster likes it or not, there is a proper channel for requesting the use of DoS's official information in public litigation. The parties must follow those procedures.

Every litigant and/or individual requesting official DoS information must go through the DoS's Touhy process. Plaintiff is no exception. In order to obtain the requested documents, information, and deposition testimony (on matters touching on DoS information) and of current and/or former MSA and/or DoS employees, a *Touhy* request seeking that information must be submitted to DoS. *See* 22 C.F.R. §§ 172.1 – 172.9.; *see also Touhy v. Ragen*, 340 U.S. 462, 468 (1951).

**b. The Terms Of The DoS/MSA Contract And DoS's *Touhy* Regulations Are Entirely Relevant And Applicable To This Litigation.**

MSA has never denied Plaintiff's right to documents, information, or to take depositions. MSA merely informed Plaintiff of the proper procedure by which he can request that official information. MSA does not have the authority to wholesomely respond to any document request, interrogatory request, or request to take depositions seeking DoS information (*i.e.*, granting access to official DoS information through deposition testimony) without DoS approval. As previously stated, "[a]ll documents and records (including photographs) generated during the performance of work under [the DoS/MSA Contract] shall be for the sole use of and become the exclusive property of the U.S. Government." ECF 38-2. DoS is well within its rights to properly ensure that the requested testimony and documents do not contain confidential information, information that could threaten national security, or privileged state secrets. *See e.g.*, *U.S. ex rel. Roby v. Boeing Co.*, 189 F.R.D. 512, 517 (S.D. Ohio 1999).

To "prove" Lancaster's argument that the DoS/MSA Contract is irrelevant in this litigation, Lancaster cites three cases that have no binding authority on this Court—*Resolution Trust Corp. v. Deloitte & Touche*, 145 F.R.D. 108, 110–11 (D. Colo. 1992), *In re Westinghouse Elec. Corp. Uranium Contracts Litigation*, 563 F.2d 992, 996–97 (10th Cir. 1977), and *Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537*, 334 F.2d 381, 384–85 (10th Cir. 1964). None of these cases indicate the existence of a contract requiring confidentiality or even mention the existence of confidential information. None of these cases indicate the triggering of an agency's *Touhy* compliance.

The DoS/MSA Contract is not only relevant to this litigation but is the pillar that MSA must reside on in navigating discovery to ensure MSA does not breach a federal government contract. The very existence of the DoS/MSA Contract, DoS's *Touhy* regulations, and DoS's

requirement for compliance with its *Touhy* regulations in the DoS/MSA Contract (by claiming that all documents created under the contract are the property of DoS) require a confidentiality order in this case. This Court provided a succinct explanation as to why an agency's (specifically DoS's) regulations **do** apply in private litigation, below.

> "Pursuant to 5 U.S.C. § 301, federal agencies may promulgate so-called Touhy regulations to govern the conditions and procedures by which their employees" can disclose official "work-related" materials and information in response to a discovery request or demand made in litigation. *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) (DHS agent's testimony); *see also United States v. Timms*, 844 F. App'x 658, 659 (4th Cir. 2021) (per curiam) (tangible items in DOJ custody); *United States v. Williams*, 170 F.3d 431, 431 (4th Cir. 1999) (FBI agent's files). These particular "housekeeping" regulations, 5 U.S.C. § 301, get their name from the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), which applied an earlier version of § 301 in "holding that agencies may legitimately promulgate regulations governing employee testimony [or other disclosure] and may, pursuant to those regulations, forbid an employe to testify [or otherwise disclose official agency information] in a court proceeding." *Soriano-Jarquin*, 492 F.3d at 504 (citing *Touhy*, 340 U.S. at 468); *see generally Touhy*, 340 U.S. at 463, 467–68 (affirming the statutory validity of a DOJ regulation instructing that, whenever a DOJ employee was served with a subpoena seeking official DOJ materials or information, the employee, unless otherwise expressly authorized, must "refuse to obey" the subpoena "on the ground that the disclosure of such [materials] is prohibited by this regulation"); *Boron Oil Co. v. Downie*, 873 F.2d 67, 69–70 (4th Cir. 1989) (discussing the same).
>
> For years, the Fourth Circuit has explained that a federal agency's authority to regulate the dissemination of official information and materials—including its "power to refuse compliance with a subpoena" commanding such disclosure in private litigation—finds its roots in sovereign immunity. *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999) ("[I]t is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena."); *accord Kasi v. Angelone*, 300 F.3d 487, 503–04 (4th Cir. 2002) (collecting cases); *Williams*, 170 F.3d at 433–34; *Smith v. Cromer*, 159 F.3d 875, 878–81 (4th Cir. 1998); *Boron Oil Co.*, 873 F.2d at 70–71; *see generally FDIC v. Meyer*, 510 U.S. 471, 475 (1997) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). This is because "the nature of [a] subpoena proceeding against a federal employee to compel him to testify about [or otherwise divulge] information obtained in his official capacity is inherently that of an action against the United States.... [S]uch a proceeding 'interferes with the public administration' and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." *Boron Oil Co.*, 873 F.2d at 70–71 (quoting

> *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (brackets omitted)); *accord COMSAT*, 190 F.3d at 278. An agency's Touhy regulations set out uniform "procedures and conditions" through which officials exercise this discretion on a case-by-case basis whenever they apply. *Soriano-Jarquin*, 492 F.3d at 504; *accord Timms*, 844 F. App'x at 659–60; *COMSAT Corp.*, 190 F.3d at 278; *Williams*, 170 F.3d at 434; *Boron Oil Co.*, 873 F.2d at 69–71; *see also* Mem. Op. of Jan. 12, 2023, at 2 n.3 ("These regulations set up the procedure by which State Department officials make decisions about whether an employee called upon to testify or to produce evidence in litigation is permitted to disclose the requested information." (citing 22 C.F.R. § 172.1)). In the Fourth Circuit, a litigant seeking protected agency information is "requir[ed] ... to comply with the [agency's] regulations as a prerequisite to obtaining" it. *See Williams*, 170 F.3d at 434; *accord Timms*, 844 F. App'x at 659–60; *Soriano-Jarquin*, 492 F.3d at 504.

*Iovino v. Michael Stapleton Assocs.*, No. 5:21-cv-00064, 2024 WL 2412694, at *2, fn. 3 (W.D. Va. May 23, 2024).

**c. No Deposition Notices Have Been Issued By Either Party.**

Further, MSA notes that, while the deposition of certain individuals has been discussed between the parties, no deposition notices have been sent by either party. Lancaster improperly states in his brief that, "The Rule 30(b)(6) deposition notice seeks MSA's official reasons for terminating Lancaster and for taking any other alleged adverse actions. This inquiry is basic to understanding any potential link between protected whistleblower activity and the termination decision. The topics outlined in the notice are quite limited." ECF 39 at 12. To date, Lancaster has **not** issued any 30(b)(6) notice on MSA.

For these reasons, MSA requests the Court grant its motion for a confidentiality order.

## IV. AS THIS COURT HAS ALREADY DETERMINED, *MENOCAL V. GEO GRP., INC.* IS NOT APPLICABLE (Responsive to ECF 39, Section IV)

Counsel for Lancaster continuously argued that this Court needed to follow *Menocal v. GEO Grp., Inc.*, No. 14–cv–02887–JLK, 2017 WL 4334000 (D. Colo. June 6, 2017) in the *Iovino* Matter when arguing that a protective order was not necessary. This Court found that "*Menocal* is

not binding on this court" and is "unpersuasive." *Iovino v. Michael Stapleton Assocs., Ltd.*, No. 5:21-cv-00064, 2024 WL 3520170, at *5 (W.D. Va. July 24, 2024) ("The court is also not aware of a single case that has relied on *Menocal* to support sidestepping a federal agency's Touhy regulations.").

Plaintiff's reliance on *Menocal v. GEO Group, Inc.*, a U.S. District of Colorado case, is misguided. ECF 39 at 12–14. In *Menocal*, "current and former detainees of the Aurora Detention Facility . . . allege that, in operating the Facility, GEO Group, Inc. ("GEO") forced them to labor in violation of the Trafficking Victims Protection Act and was justly enriched by their work." *Menocal*, 2017 WL 4334000, at *1. GEO withheld documents and information requested in discovery citing Department of Homeland Security's ("DHS") *Touhy* regulations and stating DHS had not given GEO permission to produce the documents and/or information. *Id.* at *1–2. DHS's *Touhy* regulations are codified at 6 C.F.R. § 5.44(a) and include "contractors" in the definition of "employee" for purposes of the regulation under § 5.41(c). The *Menocal* court held that GEO failed to demonstrate good cause for a protective order. *Menocal*, 2017 WL 4334000, at *4.

*Menocal* differs from this case in a number of ways. First, there is no indication that a confidentiality order was entered into in *Menocal*. Second, there is no indication that GEO had a confidentiality clause in its contract with DHS or was bound by any confidentiality restrictions. Third, there is no indication that GEO handled sensitive DHS information that needs to be protected in public litigation. Fourth, there is no indication that GEO produced *any* documents to Menocal. Rather, GEO argued that, based on DHS's *Touhy* regulations alone, GEO was permitted to withhold information requested from it through litigation. *Id.* at *1.

Here (and unlike the facts in *Menocal*), MSA risks violating its contract with DoS if it provides current and/or former DoS employees or MSA employees (who are DoS contractors) for

depositions without DoS approval. The relevant contract between DoS and MSA states that "[a]ll documents and records (including photographs) generated during the performance of work under this contract shall be for the sole use of and become the exclusive property of the U.S. Government." ECF 38-2. MSA is not able to produce documents or information or approve the requested depositions of current and/or former employees without Plaintiff submitting a *Touhy* request *because* of the confidentiality restrictions outlined in its contract with DoS. If the Court does issue a confidentiality order, MSA risks breaching its contract with DoS and subjecting itself to the repercussions that come with breaching a U.S. Government contract.

Further (and unlike the facts in *Menocal*), MSA risks its status as a government contractor if it provides current and/or former DoS employees or MSA employees (who are DoS contractors) for depositions without DoS approval. MSA's contract with DoS deals with a sensitive government program involving anti-terrorism initiatives and embassy-security protocols that are not publicly available. Because of this sensitive government program information, MSA's contract with DoS strictly mandates MSA to keep all State Department materials confidential.

Given the nature of this lawsuit, and the facts alleged therein, MSA is rightfully concerned with the public dissemination of confidential information, including but not limited to proprietary information pertaining to how MSA trains its canines and confidential information relating to how DoS utilizes the training and canines.

In *Menocal*, there is no indication that GEO produced any documents or was willing to produce any documents. As mentioned above, and as MSA has repeatedly informed counsel for Lancaster, MSA will produce documents to Lancaster as soon as a confidentiality order is entered. Indeed, MSA has already submitted documents to DoS for a confidentiality and privilege review to produce to Lancaster, once and if DoS approves them for production.

Plaintiff's reliance on *Menocal* is improper. *Menocal:* (1) analyzes an entirely different agency's (DHS's) *Touhy* regulations; (2) no confidentiality restrictions appear to be in DHS's contract with GEO; and (3) the contract between DHS and GEO does not appear to govern a sensitive government program containing a multitude of information including anti-terrorism initiatives and embassy-security protocols. Given the sharp differences between *Menocal* and this case, the Court should once again not give *Menocal* (an unpublished non-binding case from a Colorado district court) any deference, and grant MSA's motion for a confidentiality order. *See Iovino v. Michael Stapleton Assocs., Ltd.*, No. 5:21-cv-00064, 2024 WL 3520170, at *5 (W.D. Va. July 24, 2024) (finding *Menocal* unpersuasive in this context and stating that "[t]he court is also not aware of a single case that has relied on *Menocal* to support sidestepping a federal agency's Touhy regulations").

There are no distinguishing factors between this litigation and the *Iovino* Matter that bear relevance to why a confidentiality order is necessary in this case. *See, c.f.*, ECF 39 at 14–15. First, it is irrelevant that DoS and/or DOJ have not entered an appearance in this case. DoS is not a party to this litigation. Second, as detailed above, *Menocal* is not relevant or binding on this Court for all the reasons this Court previously stated (in *Iovino*) and for the reasons MSA states above.

For these reasons, MSA requests the Court grant its motion for a confidentiality order.

## V. THERE IS GOOD CAUSE TO ENTER A CONFIDENTIALITY ORDER (Responsive to ECF 39, Section V)

Lancaster argues that "MSA pleads to the Court, unabashedly without evidence, that if it provides evidence in discovery without the blessing of DoS that it will suffer reprisal by cancellation, modification or non-renewal of its contract." ECF 39 at 15–16. Not once did MSA argue this in its brief. Rather, MSA argues that a confidentiality order is necessary in this case because 1) MSA would breach the DoS/MSA Contract if it is forced to produce DoS's documents

and information without DoS's approval; and 2) the DoS/MSA Contract has significant national security concerns requiring DoS review and warranting DoS's interest in overseeing the release of sensitive materials that may be sought in this case. MSA provided this Court with relevant portions of the DoS/MSA Contract outlining MSA's confidentiality obligations. ECF 38-2. Lancaster's disbelief that a contractual obligation exists is of no moment. Permitting Lancaster to circumvent the well-established *Touhy* process implicates substantial national security issues as the MSA/DOS Contract *sub judice* involves a sensitive government program.

Lancaster further argues that "it must appear from evidence or affidavit that a real and particularized harm is likely to follow unless the protective order issues." ECF 39 at 16 (citing *In re Wilson*, 149 F.3d 249, 253 (4th Cir. 1998)). As MSA has consistently argued, there is "real and particularized harm" that is likely to follow unless this Court enters a confidentiality order. First, if the Court does not grant a confidentiality order, MSA risks breaching its contract with DoS and subjecting itself to the repercussions that come with breaching a U.S. Government contract. Second, the DoS/MSA Contract deals with a sensitive government program containing a multitude of information including anti-terrorism initiatives and embassy-security protocols that are not publicly available. The improper release of that information by Lancaster or his counsel could be catastrophic to DoS's program, and national security interests.

The confidentiality order that MSA is requesting is not a "blanket" order. ECF 39 at 17. Rather, it is a narrowly tailored order that is virtually identical (or than party names) to that entered by this Court in *Iovino*. Lancaster argues that "[e]ven where some measure of confidentiality is justified, courts disfavor blanket or 'umbrella' orders that extend broadly to nearly all materials produced in discovery." *Id.* To "prove" this point, Lancaster cites yet another non-binding case—*U.S. ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 566–67 (E.D. Va. 2010). In *U.S. ex rel. Davis*,

the U.S. District Court for the Eastern District of Virginia determined that "the protective order violates Rule 26(c) by delegating the good cause determination to the parties, thereby erasing the rule's requirement that there be a judicial determination of good cause." *Id.* at 567. This is argument fails. MSA filed a motion for a confidentiality order requesting that this Court find good cause to enter the order for all the reasons stated herein and in MSA's original motion. MSA is not requesting that the Court allow MSA or Lancaster to piecemeal determine good cause on a document-by-document basis. Doing so would be an entirely inefficient use of time, a waste of the parties' resources, and is not the standard when considering the entry of a confidentiality order.

Rather, Fed. R. Civ. P. Rule 26(c) states that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." As explained in *U.S. ex rel. Davis*, "[t]he party seeking a protective order has the burden of establishing good cause by demonstrating that specific prejudice or harm will result if no protective order is granted." *U.S. ex rel. Davis*, 753 F. Supp. 2d at 565. Therefore, it is MSA's "burden to establish good cause" for the Court to enter a Confidentiality Order. *Iovino v. Michael Stapleton Assocs., Ltd.*, No. 5:21-cv-00064, 2022 WL 17581491, at *4 (W.D. Va. Dec. 12, 2022). As stated above, and in MSA's original motion, MSA has established "that public disclosure of the materials subject to" this litigation will harm MSA, DoS, and the nation if confidential DoS materials are released to the public without DoS's approval. *Id.* ("MSA would undoubtedly be in breach of its contractual obligations with the State Department if it disclosed materials to Iovino without a confidential designation.").

For these reasons, MSA requests the Court grant its motion for a confidentiality order.

## VI. MSA HAS STANDING TO ENSURE *TOUHY* COMPLIANCE (Responsive to ECF 39, Section VI)

Lancaster improperly argues that "MSA lacks standing to assert Touhy compliance in its Motion to Dismiss" and that it is "unconstitutional to allow MSA to act in the place of" DoS. ECF 39 at 21–22. First, MSA filed a motion for a confidentiality order, not a motion to dismiss. Second, Lancaster seems to forget that he sued MSA under 41 U.S.C. § 4712. As such, *he* is the party who must establish standing to proceed with his case.

MSA's motion for a confidentiality order, in turn, originated from its contractual obligation to protect official DoS information—not because MSA is the U.S. Government. MSA does not seek to enforce DoS's *Touhy* regulations—instead, MSA only seeks to fulfill its contractual obligation to protect official DoS information. Lancaster's opposition to MSA's motion for a confidentiality order reveals his true intention—attack MSA's ability to abide by its contractual obligation to protect DoS information with a preposterous argument regarding standing *while* simultaneously pretending that he is not ultimately challenging the constitutionality of DoS's *Touhy* regulations (which can only be challenged under the Administrative Procedure Act, which Lancaster could do, but hasn't done).

At no point during this litigation has MSA acted on behalf of DoS or made any determinations as to any privileges held by DoS. *See Iovino v. Michael Stapleton Assocs.*, No. 5:21-cv-00064, 2024 WL 2412694, at *5 (W.D. Va. May 23, 2024) (quoting *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999)) ("The Fourth Circuit has held that when a government agency is not a party, *as here*, 'the APA provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas.'") (original emphasis). The privilege lies with DoS—not MSA. MSA is merely informing the Court that it is contractually bound to keep all documents confidential and cannot produce any documents to Lancaster without

DoS's approval (as DoS is the agency that can designate any documents privileged or confidential, not MSA). It is preposterous to say that MSA is attempting to act as DoS. *Cf.*, ECF 39 at 19 ("Nor can MSA be delegated executive authority or executive privilege.").

For these reasons, MSA requests the Court grant its motion for a confidentiality order.

## VII. CONCLUSION

The DoS/MSA Contract involves a sensitive government program. The benefits created by entering into a Confidentiality Order outweigh any burden on public access to the judicial process and increase the efficiency of this case moving forward.

For all the reasons stated herein and in MSA's motion for a confidentiality order, Defendant, MSA, respectfully requests this Court grant its Motion for a Confidentiality Order Under Federal Rule of Civil Procedure 26(c).

Respectfully submitted,

Date: January 3, 2025

*/s/ Daniel S. Ward*

Daniel S. Ward (VSB 45978)
Ryan C. Berry (VSB 67956)
Chelsea A. Padgett (VSB 96177)
WARD & BERRY, PLLC
1751 Pinnacle Drive, Suite 900
Tysons, VA 22102
(202) 331-8160
(202) 505-7100 Fax
dan@wardberry.com
ryan@wardberry.com
chelsea@wardberry.com

*Attorneys for Defendant Michael Stapleton Associates, Ltd., d/b/a MSA Security, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that the following participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Nate L. Adams III
Nate L. Adams III, P.C.
ADAMS AND ASSOCIATES
11 South Cameron Street
Winchester, VA 22601
(504) 667-1330
nadams@nadamslaw.com

Stephani L. Ayers
GOVERNMENT ACCOUNTABILITY PROJECT
1612 K St. NW, Suite 1100
Washington, DC 20006
(813) 382-7865
stephani@whistleblowerdefenders.com

*/s/ Daniel S. Ward*

Daniel S. Ward